Filed 11/130/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROBIN EDWARDS et al., | B284000 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC606083) |
| v. | |
| HEARTLAND PAYMENT SYSTEMS, INC., | |
| Defendant and Respondent. | |
| JAIME TORRES et al., | |
| Interveners and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Maren E. Nelson, Judge. Affirmed.

Shanberg, Stafford & Bartz, Ross E. Shanberg and Aaron A. Bartz for Interveners and Appellants.

Lawyers for Justice, Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh for Platintiffs and Respondents.

Fisher & Phillips, Todd B. Scherwin, Wendy McGuire Coats and Shaun J. Voigt for Defendant and Respondent.

———————————————

Employee Robin Edwards filed a putative class action lawsuit against employer Heartland Payment Systems, Inc. (Heartland) for myriad wage and hour violations. Employees Jaime Torres and Jorge Martinez filed a separate, later putative class action lawsuit against Heartland for similar wage and hour violations. After Edwards entered into a proposed class action settlement with Heartland and amended her complaint to encompass the claims asserted by Torres and Martinez, Torres and Martinez filed a motion to intervene in Edwards' lawsuit. The trial court denied the motion, and Torres and Martinez appealed the court's order. We affirm.

## BACKGROUND

### *1. Three Lawsuits Are Filed Against Heartland*

Heartland provides electronic processing services in California and employs sales-based employees to secure clients for those services. It was sued in three separate class action lawsuits for alleged wage and hour violations—*Edwards v. Heartland Payment Systems, Inc.* (Super Ct. L.A. County, 2016, No. BC606083) (*Edwards*), *Wilson v. Heartland Payment Systems, Inc.* (Super Ct. L.A. County, 2016, No. PC056816) (*Wilson*); and *Torres v. Heartland Payment Systems, Inc.* (Super Ct. Orange County, 2016, No. 30–2016–00838951–CU–OE–CXC) (*Torres*). The timing of the filing of the original and amended complaints in these lawsuits is important, so we set it out in some detail.

The original complaints in *Edwards* (the case before us) and *Wilson* were filed on the same day—January 5, 2016. *Edwards* alleged the plaintiff Robin Edwards was a "California-based Relationship Manager." It identified the putative class as "California-based Relationship Managers" who worked for

2

Heartland within the prior four years, including two sub-classes of Relationship Managers who were not paid minimum wage for participating in new hire orientation and mandatory training sessions, and Relationship Managers who were not reimbursed for business expenses. The complaint alleged a host of violations of the Labor Code and Industrial Welfare Commission Wage Orders. Specifically, it asserted claims for failure to pay minimum wage, to pay wages upon termination, to provide accurate wage statements, and to reimburse employee expenses, as well as violations of Business and Professions Code section 17200, et seq.

*Wilson* was a representative suit asserting a claim under the Private Attorneys General Act (PAGA) for similar wage and hour violations.

A first amended complaint was filed in *Edwards* on January 14, 2016. It was substantially similar to the original complaint, although it added the "Jump Start Program" alongside new hire orientation and mandatory training as categories of work for which California-based Relationship Managers were not paid minimum wage.

A first amended complaint was filed in *Wilson* on February 29, 2016, adding claims for failure to pay wages, to provide meal and rest breaks, to reimburse business expenses, to provide itemized wage statements, and to pay termination wages, as well as violations of Business and Professions Code section 17200, et seq. The class was defined as all "commission-based employees" employed by Heartland during the prior four years.

The complaint in *Torres* was filed on March 4, 2016, after the other two cases were filed. Plaintiff Jaime Torres was a "Sales Manager" and plaintiff Jorge Martinez was a

"Relationship Manager" for Heartland. The complaint identified classes of individuals "(1) Heartland has classified as temporary employees and/or trainees in a 'Jump Start' program and who failed to receive proper wages during the Jump Start program ('Trainees'); and/or (2) Heartland's sales-based employees, including those holding the title of Relationship Manager, Sales Manager, and similar job titles, who have not received full reimbursement for all expenses necessarily incurred in discharging their sales-related duties for Heartland, pursuant to Heartland's policies, practices and procedures ('Salespersons')." The basic claims were the same as in *Edwards*, albeit adding factual detail and adding claims for failure to pay wages and to pay overtime compensation.

A first amended complaint was filed in *Torres* on April 11, 2016, adding a PAGA claim.

A second amended complaint was filed in *Torres* on August 2, 2016, adding more factual detail to the claims already pled and adding claims for illegal deductions from wages, injunctive relief, and accounting. The job title of "Division Manager" was added as part of the sales-based employees sub-class. Factual detail was also added for the alleged illegal deductions and failure to reimburse business expenses based on several alleged Heartland policies and practices, which were not expressly identified in the *Edwards* or *Wilson* complaints.

### 2. *The Parties Settle* Edwards *After Mediation*; *The* Edwards *Complaint is Amended*

Prior to mediation, Edwards had served discovery on Heartland, and it is not clear whether Heartland responded. The parties in all the cases agreed to stay discovery and participate in mediation. The mediation was conducted on

4

November 1, 2016, and plaintiffs' counsel from all three cases was present. Counsel in *Torres* claimed that counsel in *Edwards* refused to speak with him or with counsel in *Wilson* during the mediation. The plaintiffs in *Edwards* and Heartland reached a settlement in principle and executed a memorandum of understanding.

After the preliminary settlement was reached, Edwards propounded additional "confirmatory discovery" on Heartland. Heartland provided "formal and informal responses" to those requests.

The complaint in *Edwards* was then amended twice after the settlement but before the *Torres* plaintiffs moved to intervene. Filed on March 14, 2017, the third amended complaint was the operative complaint when the *Torres* plaintiffs filed their motion. It basically brought the *Edwards* case in line with the allegations in *Wilson* and *Torres*. Suzanne Armstrong was named as a second plaintiff as a "sales-based employee" of Heartland. The proposed class was defined as all current and former sales-based employees, including those holding the positions of "Relationship Manager, Territory Manager, Sales Manager, Division Manager, and/or similar job titles," for the prior four years. Claims were added for meal and rest period violations, unlawful wage deductions, injunctive relief, declaratory relief, an accounting, and a violation of PAGA. And factual allegations were added to support the unreimbursed business expenses claim, identifying several of the alleged Heartland policies and practices mentioned in the *Torres* complaint.

### 3. *The Trial Court Denies the* Torres *Plaintiffs' Motion to Intervene in* Edwards

On April 27, 2017, the *Torres* plaintiffs filed their motion to intervene in *Edwards*. They argued for both mandatory and permissive intervention pursuant to Code of Civil Procedure section 387, subdivisions (a) and (b).

Several days later on May 5, 2017, plaintiff's counsel in *Edwards* moved for preliminary approval of the settlement. The filing disclosed a proposed total settlement amount of $650,000 and a putative class of 581 members. Heartland's counsel later updated the number of proposed class members to 773. The *Torres* plaintiffs filed an opposition to the motion for preliminary approval of the settlement.

The trial court denied the *Torres* plaintiffs' motion to intervene on May 24, 2017.[1] The court denied mandatory intervention because the *Torres* plaintiffs could "opt-out of or object to the settlement," and it noted that they had already objected. Further, at the time of approval of the settlement, the court would "undertake its duties as a fiduciary to evaluate the fairness of the *Edwards* settlement, which includes whether the settlement was reached through arm's length bargaining and whether there was sufficient investigation and discovery to allow counsel and the Court to act intelligently. . . . Procedural mechanisms are in place to safeguard the interest of putative

---

[1] The court sustained Heartland's objections to portions of a declaration from Torres's counsel and attached exhibits. Torres has not addressed those rulings on appeal, so any challenge has been forfeited. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.) We thus limit our analysis to the evidence admitted.

6

class members and concerns by [the *Torres* plaintiffs] can be raised at the time of preliminary and final approval."

The court denied permissive intervention because "[a]t this stage of the proceeding, the settlement has not been approved by the Court and thus [the *Torres* plaintiffs'] rights have not been detracted. Furthermore, if the settlement is approved, they will have the opportunity to challenge the release in the *Edwards* settlement by objecting to the settlement or may opt out of the settlement completely, such that their legal rights in the action are not hindered."

The *Torres* plaintiffs timely appealed the court's order denying intervention.

### 4. Trial Court Proceedings Continue Until We Issue a Stay

While the *Torres* plaintiffs' appeal was pending, the *Torres* plaintiffs, the *Edwards* plaintiffs, and Heartland filed further briefing on the preliminary approval of the settlement. As pertinent here, the *Torres* plaintiffs briefed whether the claims in *Edwards* were "typical of the class (notably Sales Managers)"; whether the *Edwards* plaintiffs "suffer[ed] the kinds of damages alleged in the 4th cause of action in the Second Amended Complaint—unlawful deduction of wages, portfolio buyout, grossing up"; and whether the *Edwards* plaintiffs were "Sales Managers." The *Torres* plaintiffs also briefed the extent of discovery conducted after mediation on the "newly added causes of action" and the reasonable estimate of recovery for each class member, including the value of the unlawful wage deduction cause of action.

A fourth amended complaint was filed in *Edwards* on March 2, 2018.[2]  It named two additional sales-based employees as class representatives.  Both worked as Relationship Managers and Territory Managers, and one also held the position of Division Manager.  The gross settlement amount was also increased to $775,000.

We thereafter stayed the trial court proceedings in order to consider the *Torres* plaintiffs' appeal.

## DISCUSSION

The *Torres* plaintiffs contend the trial court erred in denying both mandatory and permissive intervention pursuant to Code of Civil Procedure section 387.[3]  We find no error under either provision.

I.    **The *Torres* Plaintiffs Were Not Entitled to Mandatory Intervention**

Mandatory intervention is governed by section 387, subdivision (b), which provides in relevant part, "[I]f the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person

---

[2]    We grant Heartland's unopposed request for judicial notice of the fourth amended complaint in *Edwards*.  (Evid. Code, § 452, subd. (d).)

[3]    Code of Civil Procedure section 387 was amended effective January 1, 2018.  (Stats. 2017, ch. 131, § 1.)  The subdivisions were reorganized but the substantive requirements for intervention did not change.  The parties cite the previous version of the statute in effect at the time the court denied the *Torres* plaintiffs' motion to intervene, and we will do the same.  All undesignated statutory references are to the Code of Civil Procedure.

is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

Stated differently, to establish mandatory intervention, a proposed intervener must show (1) " 'an interest relating to the *property* [*or*] *transaction* which is the subject of the action' "; (2) the party is " 'so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest' "; and (3) the party is not adequately represented by existing parties. (*Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1423–1424 (*Siena Court*).)[4] In assessing these requirements, we may take guidance from federal law. Since "[s]ubdivision (b) of . . . section 387 is in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure," we assume " ' "the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts [citations]." ' " (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556 (*Hodge*).)

California cases are not settled on whether we review the denial of a request for mandatory intervention pursuant to section 387 de novo or for abuse of discretion. (See *Siena Court, supra,* 164 Cal.App.4th at p. 1425 [citing cases].) Federal courts

---

[4] For both mandatory and permissive intervention, the request to intervene must be made "upon timely application." (§ 387, subds. (a)–(b).) The trial court found the *Torres* plaintiffs' motion timely, and respondents do not dispute that finding on appeal.

review de novo the denial of a motion for mandatory intervention under Federal Rule of Civil Procedure 24(a)(2). (*Smith v. Marsh* (9th Cir. 1999) 194 F.3d 1045, 1049.) We need not decide which standard is correct under state law because we find no error in denying mandatory intervention under any standard.

The trial court did not expressly analyze the "interest" requirement, but it noted that the *Torres* plaintiffs "argue they have an interest in preserving their claims and rights." Respondents do not genuinely dispute this issue on appeal, and the *Torres* plaintiffs seem to accept the trial court's characterization. We agree that the *Torres* plaintiffs have an interest in preserving their claims encompassed by the *Edwards* complaint and settlement.[5]

The trial court found the *Torres* plaintiffs' ability to protect their interest would not be practically impaired or impeded by the settlement in *Edwards* because they could opt out of or object to the settlement. On this record, that conclusion was manifestly correct. Despite all of the *Torres* plaintiffs' various arguments, they truly only seek one goal—to challenge the adequacy of the settlement in *Edwards*. If they are unhappy with the settlement, they can opt out and fully preserve their causes of action. (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 582 [class member may opt out of settlement and "preserve[] his right

---

[5] The *Torres* plaintiffs also suggest in passing that they have an interest in the "procedural vehicle of a class action," quoting *Koike v. Starbucks Corp.* (N.D. Cal. 2009) 602 F.Supp.2d 1158, 1161. They cite no California case supporting the view that an unnamed class member's preference in pursuing a class action is an "interest relating to the property or transaction which is the subject of the action" under section 387, subdivision (b). Given the inadequate briefing on the issue, we reject their suggestion.

to bring an independent action"].)  If they do not want to opt out, they may object to the class settlement and point out why they believe it is unfair or inadequate.  Indeed, as noted above, they have already filed extensive objections to the settlement both before they sought to intervene and after the court denied their motion.  With these available options, formal intervention is unnecessary.

Presuming they remain members of the class, the *Torres* plaintiffs will receive additional protection from the trial court itself, which must approve any settlement in order to prevent fraud, collusion or unfairness to the class.  (*Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 93.)  "Ultimately, ' "in the final analysis it is the court that bears the responsibility to ensure that the recovery represents a reasonable compromise, given the magnitude and apparent merit of the claims being released, discounted by the risks and expenses of attempting to establish and collect on those claims by pursuing the litigation.  'The court has a fiduciary responsibility as guardians of the rights of the absentee class members when deciding whether to approve a settlement agreement.' " ' " (*Id.* at pp. 94–95.)  In denying intervention, the trial court here recognized this fiduciary duty to evaluate the fairness of the settlement in *Edwards*.

The *Torres* plaintiffs argue the trial court applied the "incorrect legal standard" when it focused on its fiduciary duties to the class, rather than on the adequacy of the class representatives *themselves*.  (See § 387, subd. (b) [intervener's interest must be "adequately represented by existing *parties*" (italics added)].)  They also contend the availability of other procedures should not factor into whether the class members can adequately represent their interests.  (See *Hodge, supra,* 130

11

Cal.App.4th at p. 555 ["[T]he standard in deciding intervention is whether existing parties adequately represent the intervener's interest in the filed lawsuit, not whether the intervener has a remedy outside of intervention if the existing parties fail to adequately represent the intervener's rights."].)  While these argument may be relevant to the separate question of adequate representation, we see no reason why the court's fiduciary duties to review the settlement cannot reinforce the conclusion that the *Torres* plaintiffs' ability to protect their interests would not be practically impaired or impeded by the settlement.

The *Torres* plaintiffs rely heavily on the California Supreme Court's recent decision in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260 (*Hernandez*) to argue that they must intervene to become parties of record in order to appeal any settlement.  They read *Hernandez* too narrowly.

*Hernandez* held that an unnamed class member lacked standing to appeal a judgment when the class member had merely objected to the attorney's fees portion of a class settlement but had not become a party of record.  The court reaffirmed the longstanding rule that unnamed class members must be parties of record to appeal, and it explained there are *two ways* to do so. "First, they may file a timely complaint in intervention before final judgment that sets forth the grounds upon which the intervention rests.  (§ 387.)" (*Hernandez, supra,* 4 Cal.5th at p. 267.)[6]  "Second, although not a method of intervention, an unnamed party to the action may also become a named party by

_____

[6]     The *Hernandez* court also noted, "The fact that section 387 allows for a 'timely' application means that intervention after a judgment is possible." (*Hernandez, supra,* 4 Cal.5th at p. 267.)

12

filing an appealable motion to set aside and vacate the class judgment under section 663." (*Ibid.*) Thus, under *Hernandez*, the *Torres* plaintiffs may preserve their rights to appeal by filing a section 663 motion. (See *Hernandez,* at p. 273 ["Had [the unnamed class member] properly intervened in the class action *or filed a section 663 motion to vacate the judgment,* and been denied relief, she could have had a clear path to challenge the attorney fees award (or settlement or judgment) on appeal." (Italics added.)].)

In their opening brief, the *Torres* plaintiffs did not address this second option of filing a motion to vacate the judgment under section 663, even though the court in *Hernandez* clearly identified it as an alternative. They argue for the first time in their reply brief that a motion to vacate the judgment pursuant to section 633 provides "inferior rights" in the trial court and on appeal compared to becoming a party through intervention. By failing to assert this argument in their opening brief, the *Torres* plaintiffs waived the contention. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477–1478.)

The *Torres* plaintiffs also rely on *Smith v. SEECO, Inc.* (8th Cir. 2017) 865 F.3d 1021, which concluded that opting out of a class action did not preclude a class member from intervening in a class action to preserve an interest in adequate representation. While we look to federal cases for guidance in interpreting section 387 (see, e.g., *Hodge, supra,* 130 Cal.App.4th at p. 556), we are not persuaded by the court's reasoning. Treating "adequate representation" as a stand-alone "interest" conflates the interest and inadequate representation requirements in section 387. Looking to the language of section 387, if adequate representation is an "interest relating to the property or

13

transaction which is the subject of the action," then a proposed intervener would have to show this interest—that is, adequate representation—is not "adequately represented by existing parties." (§ 387, subd. (b).) This circular reading of section 387 does not make sense. In any event, federal cases are not uniform on the issue—others have denied intervention because a class member could protect his or her interests by opting out of the class action or objecting to a settlement. (See, e.g., *Davis v. J.P. Morgan Chase & Co.* (W.D.N.Y. 2011) 775 F.Supp.2d 601, 605–606 [citing federal cases].)

The trial court did not separately analyze the final element of inadequate representation, and we need not address it. The *Torres* plaintiffs' failure to show their own ability to protect their interests would be practically impaired or impeded by the settlement defeats mandatory intervention. (See *Siena Court, supra,* 164 Cal.App.4th at p. 1426 [affirming denial of mandatory intervention because proposed intervener did not show he needed to intervene to protect interests].)

## II. The Trial Court Did Not Abuse its Discretion in Denying Permissive Intervention

Permissive intervention is governed by section 387, subdivision (a), which states, "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." Under this provision, " 'the trial court has discretion to permit a nonparty to intervene where the following factors are met: (1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention

14

outweigh any opposition by the parties presently in the action. [Citation.]' " (*Siena Court, supra,* 164 Cal.App.4th at p. 1428.) We review the denial of permissive intervention for abuse of discretion. (*Ibid.*; see *City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 906.)

The trial court denied permissive intervention because the settlement in *Edwards* had not yet been approved and the *Torres* plaintiffs could object to or opt out of any settlement, so "their legal rights in the action are not hindered." It is not clear which specific element of permissive intervention the trial court found lacking. On appeal, we presume the judgment is correct, and if it is correct on any theory, we will affirm regardless of the trial court's reasoning. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Given our discussion above, the trial court could have reasonably concluded that the *Torres* plaintiffs' reasons for intervening in light of their right to opt out or object to the settlement did not outweigh the objections by the other parties.

On appeal, the *Torres* plaintiffs advance three interests that they contend outweigh any objections to intervention, none of which is persuasive. First, they contend they must intervene to protect their appeal rights, relying on *Hernandez*. For reasons already explained, their reading of *Hernandez* is not accurate.

Second, they contend the *Edwards* plaintiffs intend to resolve their class claims from the *Torres* complaint without named class members who held the roles of Division Manager and sales manager. This argument is moot because the *Edwards* complaint was amended to add class representatives who held the roles of Relationship Manager, Territory Manager, and Division Manager.

15

Third, they contend they must intervene to conduct discovery for the claims added to the *Edwards* complaint after the parties attended the mediation and entered the proposed settlement. They do not need to intervene to seek discovery; as objectors, they may seek discovery to ensure sufficient information has been provided to evaluate the fairness of the settlement. (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 132–133 [objectors may not "frustrate the mutual interest of the class members and the defendant to resolve the litigation promptly by conducting extended or unnecessary discovery," but when "the settling parties provide essentially no information to explain, much less to substantiate, their evaluation of the magnitude or potential merit of the claims being settled, objectors should not be denied access to data that reasonably may be expected to shed light on these issues"].)

## DISPOSITION

The order is affirmed. Respondents Edwards and Heartland are awarded costs on appeal. The stay of proceedings we previously imposed is lifted.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P.J.

We concur:


GRIMES, J.      DUNNING, J.[*]

_____

[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.