Filed 5/18/20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARLSBAD POLICE OFFICERS ASSOCIATION et al., | D075723 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2019-00005450-CU-WM-CTL) |
| CITY OF CARLSBAD et al., | |
| Defendants and Respondents; | |
| AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO & IMPERIAL COUNTIES et al., | |
| Interveners and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County,

Eddie C. Sturgeon, Judge.  Reversed and remanded with directions.

Sheppard, Mullin, Richter & Hampton, James M. Chadwick, Tenaya Rodewald,

and Matthew Halgren for Interveners and Appellants Scripps Media, Inc., doing business

as KGTV-TV, The San Diego Union-Tribune, LLC, KFMB-TV News 8, KNSD (NBC7),

KPBS Public Broadcasting, and Voice of San Diego.

ACLU Foundation of San Diego & Imperial Counties, David Loy, and Jonathan Markovitz for Interveners and Appellants American Civil Liberties Union of San Diego & Imperial Counties and Flora Rivera.

Reporters Committee for Freedom of the Press, Katie Townsend, Bruce D. Brown, and Lin Weeks for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Interveners and Appellants Scripps Media, Inc., et al.

Bobbitt, Pinckard & Fields, Richard L. Pinckard, Bradley M. Fields, and Amy R. Margolies for Plaintiffs and Respondents Carlsbad Police Officers Association, et al.

McDougal Love Boehmer Foley Lyon & Canlas, Morgan L. Foley and Lauren N. Hendrickson for Defendants and Respondents City of El Cajon and Jeff Davis, City of National City and Manuel Rodriguez.

City of Oceanside, Office of the City Attorney, John Mullen, Annie Higle for Defendants and Respondents City of Oceanside and Frank McCoy.

Section 387 of the Code of Civil Procedure[1] permits a nonparty to intervene in a pending case, either as of right or permissively, when certain criteria are met. To encourage the pursuit of public interest litigation, section 1021.5 authorizes an award of attorney's fees to the prevailing party. In this "reverse-PRA" case,[2] eight police officer associations (POAs) filed a petition for writ of mandate seeking to prevent their respective agencies from disclosing certain records of police misconduct or use of force pursuant to a new law, Senate Bill No. 1421. (Stats. 2018, ch. 988, § 2.) Several media organizations and a civil rights group moved to intervene, and the trial court conditioned their participation on the interveners striking their requests to recover statutory attorney's fees. It later agreed with the interveners on the merits that Senate Bill No. 1421 required disclosure of pre-2019 police records.

The interveners challenge the condition placed on their intervention. The scope of a court's power to limit intervention under section 387 appears to be one of first impression in California. We conclude that although a trial court may place reasonable limits even as to intervention of right, the condition imposed here was *unreasonable* and amounted to an abuse of discretion. We therefore reverse the order and remand for

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] In a "reverse-PRA" action, an interested third party seeks a judicial ruling precluding a public agency from disclosing allegedly confidential documents pursuant to the California Public Records Act (Gov. Code, § 6250 et seq.) (PRA or CRPA). (See *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1267 (*Marken*).)

3

further proceedings to permit the interveners to seek reasonable attorney's fees against the POAs pursuant to section 1021.5.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, the Legislature passed Senate Bill No. 1421 to expand public access to police records concerning the use of deadly or serious force and significant misconduct. (Sen. Bill No. 1421, Stats. 2018, ch. 988.)  The new law took effect on January 1, 2019. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)

Within a month, eight POAs (Carlsbad, Coronado, El Cajon, Harbor, National City, Oceanside, San Diego, and San Diego Schools) petitioned for writ of mandate to prevent their respective police agencies from releasing pre-2019 records pursuant to Senate Bill No. 1421.  The POAs maintained that applying the new legislation to records concerning events that occurred before January 1, 2019 would amount to impermissible "retroactive" application of the law.  Their petition named as respondents the cities of Carlsbad, Coronado, El Cajon, San Diego, National City, and Oceanside; the San Diego Unified Port District; the San Diego Unified School District; and the corresponding police chiefs (collectively, the agencies).

The POAs requested a temporary stay barring disclosure of pre-2019 records.  The agencies did not oppose their request.  The court issued an alternative writ, set a March 1 hearing date, and entered a temporary stay.

Roughly one week later, the ACLU of San Diego and Imperial Counties and its client Flora Rivera (collectively, the ACLU interveners) filed a motion seeking leave to intervene (§ 387).  The ACLU had filed a series of requests under Senate Bill No. 1421

4

since January 1, 2019 directed to the agency respondents. Among them was a request filed on February 8 on behalf of Rivera, whose brother was killed in an encounter with San Diego Police Department officers in 2018. The ACLU interveners sought leave to intervene both as of right and on a permissive basis under section 387. Their proposed complaint in intervention sought attorney's fees against the POAs.

A separate motion for leave to intervene was filed by Scripps Media, Inc., doing business as KGTV-TV, The San Diego Union-Tribune, LLC, KFMB-TV News 8, KNSD (NBC7), KPBS Public Broadcasting, and Voice of San Diego (collectively, the Media interveners). Each of these news organizations had filed PRA requests with the agency respondents seeking records covered by Senate Bill No. 1421 and claimed they had received inadequate responses. Like the ACLU interveners, the Media interveners sought to intervene both as of right and on a permissive basis under section 387. Unlike the ACLU interveners, the Media interveners requested relief against the agencies, asserting an affirmative cause of action for violations of the PRA and the California Constitution and seeking a writ of mandate directing the agencies to respond to their pending records

requests. As relevant to this appeal, the Media interveners sought attorney's fees against both the POAs and the agencies.[3]

Most of the agencies did not oppose the requests to intervene. Three agencies— Coronado, El Cajon, and National City—opposed intervention by the Media interveners but not by the ACLU interveners. They believed the Media interveners' request for affirmative relief would impermissibly transform a reverse-PRA action into an effort to enforce still-pending PRA requests. They further objected to the Media interveners' request for attorney's fees, arguing that their interests and the Media interveners' interests were aligned. To the extent intervention would be allowed, the three agencies urged the court to preclude the Media interveners from recovering attorney's fees.

The POAs opposed both requests to intervene. Arguing the respondent agencies were inclined to produce pre-2019 records, the POAs maintained that the interveners failed to meet the third criterion for intervention of right—i.e., that their interests were inadequately represented by the original parties. Nor was permissive intervention warranted—the POAs claimed the requests for attorney's fees would enlarge the lawsuit

---

3    Although both the ACLU and Media interveners chose to include requests for attorney's fees in their proposed complaints in intervention, they had no obligation to do so. (See *Faton v. Ahmedo* (2015) 236 Cal.App.4th 1160, 1169 ["statutory attorney fees need not be pleaded and proved at trial and may properly be awarded after entry of judgment"]; *Snatchko v. Westfield LLC* (2010) 187 Cal.App.4th 469, 497 [plaintiff's failure to include prayer for attorney's fees under section 1021.5 "does not waive or forfeit his ability to seek them at the conclusion of the case"].) Even if not mentioned in their complaints, the interveners would still be entitled to seek statutory attorney's fees as an element of costs following successful conclusion of the case. (See Code Civ. Proc., § 1033.5, subd. (a)(10)(B).)

by introducing a request for additional or different relief. In addition, the POAs suggested the specter of an attorney's fee award would interfere with the rights of the original parties to litigate the lawsuit on their own terms.

The court held a hearing on February 15 on the motions for leave to intervene. It explained that its tentative decision was to allow intervention but require the interveners to strike their requests for attorney's fees because these requests would enlarge the issues in the case. The Media interveners responded that enlargement of the issues was a factor only for permissive intervention, whereas they sought intervention by right. And to the extent intervention was merely permissive, the fact that the POAs also sought attorney's fees demonstrated that the interveners' request would not expand the scope of litigation. Counsel for the ACLU interveners joined in these arguments.

The court proceeded to allow intervention, finding it "appropriate under the third prong," presumably in reference to the POAs' argument against mandatory intervention. However, it conditioned intervention on the ACLU and Media interveners striking their request for attorney's fees, explaining:

> "The issue of attorney fees, it's a big issue because I have the police officers association, and I've got all of you in here. In this court's humble opinion, I think it's best to strike the attorney's fees. If you want to file your motion in intervention, strike the attorney fees. You could say, hold on, Judge, we don't like that. You can file your own separate lawsuit. That's up to you to make that choice. I will leave it to you. I'll give you my opinion. I think it's best to get this thing done on March 1, one way or the other. I'm going to leave that up to you. If you want to intervene, strike the attorney fees provision."

7

In a minute order, the court indicated it was exercising "its discretion" to grant leave to intervene, "provided however" that both interveners "strike their request for attorney's fees which will enlarge the issues in this case."[4]

The ACLU and Media interveners filed their complaints in intervention, striking their requests for attorney's fees. They subsequently filed merits briefs opposing the POAs' petition. The agencies took no stance. Following a hearing on March 1, the trial court denied the POAs' petition, concluding that Senate Bill No. 1421 covered records concerning events occurring before January 1, 2019.[5] After the court issued a "partial judgment denying [the POAs'] petition for writ of mandate," the ACLU and Media interveners appealed the February 15 order limiting the scope of their intervention.

DISCUSSION

This case presents a matter of first impression in California: can a trial court condition leave to intervene on a nonparty agreeing to forgo its request for statutory attorney's fees? As we explain, under the circumstances presented, the trial court could not. Accordingly, we reverse the order and remand the case for further proceedings to

---

[4]    As later discussed in more detail, it is unclear whether the trial court permitted intervention on a permissive or mandatory basis.

[5]    An appellate court later reached the same conclusion in a different case. (*Walnut Creek Police Officers' Association v. City of Walnut Creek* (2019) 33 Cal.App.5th 940, 941–942.)

permit the interveners to seek an award of attorney's fees against the POAs pursuant to section 1021.5.[6]

A.   *A Successful Intervener in a Reverse-PRA Action Is Entitled To Seek Attorney's Fees Pursuant To Section 1021.5.*

Section 1021.5 codifies the judicially-created private attorney general doctrine. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217−1218 (*Whitley*).) "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)  In other words, the statute considers whether the action:  (1) enforced an important public right, (2) conferred a significant public benefit, and (3) is of a type that private enforcement was necessary, and the financial burden justifies subsidizing the

---

6    Following entry of judgment against the POAs, litigation continued between the Media interveners and the agencies on the affirmative PRA claim.  Five of the agencies were voluntarily dismissed before the trial court.  After briefing was complete on appeal, the Media interveners settled their claims with the remaining three agencies and filed associated requests for dismissal.  The requests are granted.  (Cal. Rules of Court, rule 8.244(c)(2).)  The City of Oceanside and Frank McCoy, the City of El Cajon and Jeff Davis, and the City of National City and Manuel Rodriguez are dismissed from the appeal, with each of those parties and the Media interveners to bear their own associated costs.  We accordingly resolve the sole remaining issue:  whether the court properly conditioned participation by the Media and ACLU interveners on those entities forgoing their right to seek attorney's fees against the POAs pursuant to section 1021.5.

9

successful party's attorneys. (*Whitley*, at p. 1214.) The third factor "does not apply where, as here, a plaintiff's action produces no monetary recovery." (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194, 218, citing *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934–935.)

The fundamental purpose of the private attorney general doctrine is to encourage parties to bring lawsuits that effectuate a strong public policy and confer benefits to a broad class of citizens, by awarding substantial attorney's fees to those who successfully bring such suits. (*Whitley*, *supra*, 50 Cal.4th at pp. 1217−1218.) " 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will *as a practical matter frequently be infeasible*.' " (*Id.* at p. 1218.)

Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. (*Lyons v. Chinese Hosp. Assn.* (2006) 136 Cal.App.4th 1331, 1344 (*Lyons*).) Unless special circumstances would render an award of 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria have been met. (*Ibid.*, accord *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391)[7]

---

[7] There is no indication that the trial court precluded interveners from recovering section 1021.5 fees here based on any finding that such an award would be unjust.

It is now well established that a successful intervener seeking records disclosure in a reverse-PRA action is entitled to recover attorney's fees under section 1021.5. In *Pasadena Police Officers Association v. City of Pasadena* (2018) 22 Cal.App.5th 147, 159 (*Pasadena Police*), Division One of the Second Appellate District concluded it was error to deny attorney's fees to the Los Angeles Times after it successfully intervened in a reverse-PRA action brought by two police officers to prevent the disclosure of investigative reports concerning their shooting of an unarmed African American teen. Attorney's fees were recoverable under section 1021.5 because the case "involve[d] public officials and a public employee union pursuing litigation designed to expand the ability of police officers and a police department to withhold information from the public." (*Pasadena Police*, at pp. 165−166.) The trial court had erred by focusing on the subjective motivations of the officers; all that mattered was that the officers and their POA "plainly attempted to restrict the public's right of access to police records"—a matter implicating important public rights for purposes of section 1021.5. (*Pasadena Police*, at pp. 164−165.)

Division Eight of the Second Appellate District reached a similar conclusion in *City of Los Angeles v. Metropolitan Water District of Southern California* (2019) 42 Cal.App.5th 290 (*Metropolitan Water*). When a city controller questioned the merits of a government-run artificial-turf rebate program, the San Diego Union-Tribune submitted a PRA request to a regional water district seeking information about who had participated in the program. After conferring with its member—a city water department—the district produced redacted records. (*Id.* at p. 297.) The Union-Tribune

objected to the redactions.  Meanwhile, the city water department filed a reverse-PRA lawsuit seeking to enjoin the district from releasing information about turf program participants.  After the Union-Tribune intervened, the trial court denied the water department's petition and granted the Union-Tribune's cross-petition to compel disclosure.  The court also awarded attorney's fees under section 1021.5, a ruling the appellate court affirmed.  The Union-Tribune had " 'enforced an important right affecting the public interest,' " specifically, the public's " 'right to know how the government uses public money,' " and disclosure " 'conferred a significant benefit on the public.' " (*Metropolitan Water*, at p. 306.)

Here, there is no dispute that the release of police records concerning officer misconduct and use of serious force implicates a matter of public interest.  The trial court expressed as much in allowing intervention:  "clearly, we have got a very important issue statewide.  I'm not the only court looking at this."  Instead, the POAs attempt to distinguish *Pasadena Police* by claiming their action was *not* a reverse-PRA claim.  Whereas the officers in *Pasadena Police* sought to block access to a specific pending CPRA request, the POAs argue they were seeking "clarification" as to the scope of Senate Bill No. 1421.  As the Media interveners suggest, however, this supposed distinction only underscores the public interest at stake.  (See *Pasadena Police*, *supra*, 22 Cal.App.5th at pp. 164–165 [police officer union's efforts to broaden exemptions to PRA disclosure "further justifies the imposition of attorney fees," showing an institutional rather than purely private interest].)  As a factual matter, the POAs made specific reference in their writ petition to the "massive influx" of PRA requests under Senate Bill

12

No. 1421 that threatened to overwhelm the agency respondents. That the POAs sought to categorically impair a multitude of records requests does not change the nature of their reverse-PRA action.[8]

In short, *Pasadena Police* and *Metropolitan Water* have established that attorney's fees are available under section 1021.5 to an intervening party in a reverse-PRA case.[9] But our analysis does not stop there. Contrary to the POAs' claim, the question before us is not whether the trial court abused its discretion in *denying* a request for attorney's fees under section 1021.5. The ACLU and Media interveners were barred from *seeking* attorney's fees under this statute as a condition of their intervention. The question is thus

---

[8]    The POAs also imply that we should reject any request for attorney's fees because the interveners "baited POAs into believing that they would not be subject to a fee request" when the interveners opted to intervene rather than file a separate lawsuit. We struggle to comprehend this argument, which the POAs do not support with citation to any authority. (Cal. Rules Court, rule 8.204(a)(1)(B).) The interveners preserved their objection to the court's ruling and may now be heard to challenge it on appeal. To the extent the POAs mean to suggest (as they did before the trial court) that an attorney's fee award might chill their ability to litigate on behalf of their members, a compelling policy argument could likewise be made to the contrary—that fee-shifting in a reverse-PRA action discourages the pursuit of meritless actions designed to obstruct public access to information subject to disclosure. Indeed, the same suggestion could be made by any party potentially subject to an award of attorney's fees under section 1021.5, but it is a position the Legislature necessarily rejected when it enacted the statute.

[9]    Language in *Marken* that a PRA records requester "who participates in a reverse-CPRA lawsuit would not be entitled to attorney's fees" (*Marken*, *supra*, 202 Cal.App.4th at p. 1268) must be construed in context: the *Marken* court was referring to an intervener's right to recover fees under the *PRA* (Gov. Code, § 6259, subd. (d)) in a reverse-PRA action. The PRA does not permit such an award. (*National Conference of Black Mayors v. Chico Community Publishing, Inc.* (2018) 25 Cal.App.5th 570, 583, 587.) Moreover, "*Marken*'s statement about attorney fees was part of the court's general discussion of the viability of reverse-CPRA actions and so was dicta; no attorney fees were sought in that appeal." (*Metropolitan Water*, *supra*, 42 Cal.App.5th at p. 301.)

13

whether the court could validly impose such a condition on intervention. In answering this question, we first explore whether intervention here was permissive or compulsory.

B.    *The ACLU and Media Interveners Were Entitled To Intervention of Right.*

"An intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons by doing any of the following: [¶] (1) Joining a plaintiff in claiming what is sought by the complaint. [¶] (2) Uniting with a defendant in resisting the claims of a plaintiff. [¶] (3) Demanding anything adverse to both a plaintiff and a defendant." (§ 387, subd. (b).) By allowing nonparties to participate in litigation, section 387 "protects the interests of others affected by the judgment, obviating delay and multiplicity." (*People v. Superior Court* (*Good*) (1976) 17 Cal.3d 732, 736 (*Good*).)

Section 387 recognizes two forms of intervention. The first is compulsory. Under subdivision (d)(1)(B), a trial court "shall, upon timely application, permit a nonparty to intervene in the action or proceeding" if that person "claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one of the existing parties." In other words, to establish a right to mandatory intervention, the nonparty must: (1) show a protectable interest in the subject of the action, (2) demonstrate that the disposition of the action may impair or impede its ability to protect that interest; and (3) demonstrate that its interests are not adequately represented by the existing parties. (*Edwards v. Heartland Payment Systems*, *Inc.* (2018) 29 Cal.App.5th 725, 732

14

(*Edwards*).) These criteria are virtually identical to those for compulsory joinder of an indispensable party. (*Hodge v. Kirkpatrick Development*, *Inc.* (2005) 130 Cal.App.4th 540, 556 (*Hodge*); see § 389, subd. (a).)

If intervention is not compulsory, leave to intervene may also be granted on permissive grounds. Under section 387, subdivision (d)(2), "[t]he court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both." Permissive intervention is appropriate if: "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386; see *City of Malibu v. Cal. Coastal Com.* (2005) 128 Cal.App.4th 897, 902.)

"Whether intervention is permissive or mandatory, a petition to seek leave is required; without permission from the court, a party lacks any standing to the action." (*Lohnes v. Astron Computer Products* (2001) 94 Cal.App.4th 1150, 1153.) Although a party may assert that it holds an unconditional right to intervene, that right is conditioned on a court's initial determination that the application to intervene is *timely*. (*Ibid.*) Here, there is no dispute that the ACLU and Media interveners' applications were timely.

If leave to intervene is granted, "[t]he intervener becomes a party to the action with all of the same procedural rights and remedies of the original parties." (*Catello v. I.T.T. General Controls* (1984) 152 Cal.App.3d 1009, 1013−1014 [original party was

15

entitled to recover costs under section 1032 after intervener voluntarily dismissed its complaint in intervention]; see also *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 602−603; 4 Witkin, Cal. Proc. (5th Ed. 2008) Pleading, § 226.) Critically, those procedural rights and remedies include the right to seek attorney fees under section 1021.5 on equal terms with the original parties. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 87 (*Stewart*); *People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 458.)

As the Media interveners suggest, the record is unclear whether the trial court granted leave to intervene permissively or as of right. In finding intervention "appropriate under the third prong," the court appeared to respond to the POA's argument that the interveners failed to satisfy the third requirement for *mandatory* intervention because the agencies would adequately represent their interests. But the minute order also stated the requests for attorney's fees would enlarge the issues—a criterion for permissive intervention. Where intervention is as of right, "[i]t makes no difference that such intervention will expand the issues in the case and impinge on the right of the original parties to litigate the matter in their own fashion." (Weil et al., Civil Practice Guide: Civil Procedure Before Trial (The Rutter Group), ¶ 2:401.)

We agree that the ACLU and Media interveners qualified for intervention of right. Both had filed a series of records requests with the eight agencies, seeking pre-2019 police records pursuant to newly enacted Senate Bill No. 1421. Through their mandamus petition, the POAs sought to prevent the agencies from releasing pre-2019 records pursuant to a PRA request. Therefore, the interveners had direct interests in the subject

16

matter of the litigation. "A successful reverse-CPRA lawsuit seeking to prevent a public agency from releasing information on the ground the requested disclosure is prohibited by law will necessarily affect the rights of the party requesting the information—a party whose interest in access to public records is recognized by California Constitution, article I, section 3, subdivision (b)(1), as well as the CPRA, and protected by specific provisions of the CPRA authorizing litigation to compel disclosure." (*Marken*, *supra*, 202 Cal.App.4th at pp. 1269−1270.)

Absent intervention, resolution of the petition in the POA's favor would, "*as a practical matter impair or impede* [the interveners'] *ability* to protect that interest." (*Hodge*, *supra*, 130 Cal.App.4th at p. 554; see § 387, subd. (d)(1)(B).) Finally, although the agencies believed Senate Bill No. 1421 covered pre-2019 police records, it was readily apparent by the time leave to intervene was sought that they would not vigorously challenge the merits of the POAs' claim. The POAs' petition suggested police departments would be overburdened if forced to respond to the "massive influx" of PRA requests seeking pre-2019 records. The City of Carlsbad and Chief of Police Neil Gallucci filed an immediate response to the petition indicating the agency would "take no position and neither oppose or deny Petitioners' requested relief." None of the agencies opposed the POAs' stay request. Three agencies (Coronado, El Cajon, and National City) opposed intervention by the Media interveners to the extent they sought attorney's fees. And after leave to intervene was granted, none of the agencies took a stance on the merits.

17

On this record, the Media and ACLU interveners qualified for intervention of right under section 387, subdivision (d)(1)(B). To the extent the court believed the attorney's fee requests would enlarge the issues in the case, this factor was not relevant to a grant of compulsory intervention.

C.    *The Trial Court Abused its Discretion in Conditioning Intervention of Right on Forgoing Otherwise Appropriate Requests for Statutory Attorney's Fees.*

The POAs maintain that regardless of whether intervention was mandatory or permissive, intervention was "specifically conditioned" on the interveners striking their requests for attorney's fees. This argument goes to the heart of the matter before us—may a trial court condition intervention on a nonparty giving up its right to request statutory attorney's fees? For reasons we explain, the court could not impose such a condition here.

The parties do not cite, nor have we found, California authority specifically delineating when and how a court may restrict intervention.[10] It is well settled that a trial court has inherent power to exercise reasonable control over litigation pending before it ' "in order to ensure the orderly administration of justice.' " (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 (*Rutherford*); see §§ 128, subd. (a)(3), 187.) These inherent powers primarily encompass "*procedural* matters, typically to control the court's own process, proceedings and orders," or to create "workable means"

_____

[10]    A single-sentence footnote in *Bustop v. Superior Court* (1977) 69 Cal.App.3d 66 states that the interveners in that case had "stipulated to waive the provisions of Code of Civil Procedure section 170.6 as a condition of intervention." (*Id.* at p. 72, fn. 2.) But the case does not mention whether that condition was *court-imposed*, and if it was, whether such a restriction would be valid.

to enforce statutory rights.  (*Topa Ins. Co. v. Fireman's Fund Ins. Cos.* (1995) 39 Cal.App.4th 1331, 1344.)  Among these powers is the ability to "make discretionary orders with reasonable conditions."  (*Venice Canals Resident Home Owners Assn. v. Superior Court* (1977) 72 Cal.App.3d 675, 679.)  For example, a court may condition entering a temporary stay on requiring the posting of a bond or undertaking to protect affected third parties.  (*Id.* at pp. 679−680.)  A court may likewise require parties to engage in mandatory settlement negotiations and place reasonable conditions (such as personal appearance) on their participation.  (*Wisniewski v. Clary* (1975) 46 Cal.App.3d 499, 505.)  On the other hand, a court has no inherent power to override a statute or established principles of law.  (*Rutherford*, at p. 967.)  For example, it may not impose attorney's fees as a sanction where fees were not authorized by contract or law.  (*Wisniewski*, at p. 506.)  From these general principles we infer that a trial court has inherent power to place *reasonable* conditions on intervention.

Federal authorities help refine that rule.  Although not identical in all respects, section 387 is modeled in part after rule 24 of the Federal Rules of Civil Procedure.  Statutory language allowing intervention of right was added to section 387 in 1977 and "is in substance an exact counterpart" to the parallel federal rule.  (*Hodge*, *supra*, 130 Cal.App.4th at p. 556; *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164

19

Cal.App.4th 1416, 1423.)[11] It follows that the Legislature must have intended that the two mandatory intervention statutes should have the same meaning, and we may look to authorities construing the parallel federal rule for guidance. (*Hodge*, at p. 556; *Siena Court*, at p. 1423; *Edwards*, *supra*, 29 Cal.App.5th at pp. 732−733.)

Justice William Brennan suggested an approach to evaluating the scope of a court's power to restrict intervention in a concurring opinion in *Stringfellow v. Concerned Neighbors in Action* (1987) 480 U.S. 370 (*Stringfellow*). He reasoned that although courts may impose reasonable conditions of intervention, a district court "has less discretion to limit the participation of an intervenor of right than that of a permissive intervener." (*Id.* at p. 382 (conc. opn. of Brennan, J.).) Unlike the permissive intervener, the intervener of right has "an interest at stake which the other parties will not fully protect, and which the intervenor can fully protect only by joining the litigation." (*Id.* at p. 382, fn. 1 (conc. opn. of Brennan, J.).) Nevertheless, even interveners of right " 'may

---

11      Section 387, subdivision (d)(1) provides: "The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if either of the following conditions is satisfied: [¶] (A) A provision of law confers an unconditional right to intervene. [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties."

Rule 24(a) of the Federal Rules of Civil Procedure provides, "On timely motion, the court must permit anyone to intervene who: [¶] (1) is given an unconditional right to intervene by a federal statute; or [¶] (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings.' " (*Id.* at p. 383, fn. 2 (conc. opn. of Brennan, J.).) Later cases have followed Justice Brennan's suggested approach.

Because permissive intervention "is addressed to the discretion of the court," a district court "may impose various conditions or restrictions on the scope of intervention." (*Lesz v. Kavanaugh* (N.D.Tex. 1991) 783 F.Supp. 286, 292.) For example, in *Department of Fair Employment & Housing v. Lucent Technologies, Inc.* (9th Cir. 2011) 642 F.3d 728 (*DFEH*), a California agency sued Lucent Technologies for violating the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) by terminating its employee. The district court allowed permissive intervention by the aggrieved employee, but to avoid duplication it only permitted him to litigate "those claims not asserted by DFEH." (*DFEH*, at p. 741.) In addition, the court restricted the employee from duplicating DFEH's discovery requests and prevented him from seeking attorney's fees for work performed on DFEH's claims or work duplicating DFEH's efforts. (*Ibid.*) These various conditions, including the preemptive limit on recoverable attorney's fees, did not amount to an abuse of discretion. (*Id.* at pp. 741−742; see also *Stringfellow, supra*, 480 U.S. at p. 378 [restricting permissive intervener's claims and rights to discovery did not amount to constructive denial of citizens group's motion to intervene].)

Courts may likewise impose reasonable conditions "of a housekeeping nature" on interveners of right. (7C Wright, Miller & Kane, Fed. Practice & Procedure (3d ed. 2007), § 1922, pp. 630−632.) A unilateral right to intervene "does not prevent the

21

imposition of reasonable limitations on Applicants' participation to ensure the efficient adjudication of the litigation." (*United States v. Duke Energy Corp.* (M.D.N.C. 2001) 171 F.Supp.2d 560, 565 (*Duke*); see *Beuregard, Inc. v. Sword Services LLC* (5th Cir. 1997) 107 F.3d 351, 353 [same].) For example, where interveners of right in public-law litigation "have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole," it may be reasonable "to limit intervention as of right to discrete phases of the litigation." (*Harris v. Pernsley* (3d Cir. 1987) 820 F.2d 592, 599 & fn. 11; see also *United States v. Detroit* (6th Cir. 2013) 712 F.3d 925, 931−932.) Likewise, to avoid duplication, expense, and delay when discovery is already underway, a magistrate judge may require leave of court for the intervener to initiate unilateral independent discovery. (*Duke*, at p. 565.)

These cases stand for the proposition that just as a court has inherent case management authority to place reasonable limits on the original parties as to procedural matters, scheduling, and discovery, it may likewise place such restrictions on interveners of right. Because an intervenor of right necessarily has an interest at stake that the original parties will not adequately protect, it "therefore has an interest in the litigation similar to that of the original parties." (*Stringfellow*, *supra*, 480 U.S. at p. 382, fn. 1 (conc. opn. of Brennan, J.).)

By contrast, a court abuses its discretion by severely restricting the participation of an intervener of right. (*Columbus-America Discovery Group v. Atlantic Mutual Ins. Co.* (4th Cir. 1992) 974 F.2d 450, 469−470 [court could not effectively deny all discovery to intervener of right] (*Columbus*).) "While the efficient administration of justice is always

22

an important consideration, fundamental fairness to every litigant is an even greater concern." (*Id.* at p. 470.) A court consequently has limited authority "to make significant inroads on the standing of an intervenor of right; in particular, it should not be allowed to limit the intervenor in the assertion of counterclaims or other new claims." (7C Wright, Miller & Kane, *supra*, § 1922; see *Florida Medical Assn., Inc. v. Dept. of Health, Educ., & Welfare* (M.D.Fla. May 18, 2011, No. 3:78–cv–00178–MMH–MCR) 2011 U.S.Dist.Lexis 11180, *21 [rejecting party's request to strike intervener's cross-claims as a condition of intervention of right] (*Florida*).) As one scholar put it, reasonable limits on interveners of right "do not preclude effective presentation of the intervener's interest." (Shapiro, *Some Thoughts on Intervention before Courts, Agencies, and Arbitrators* (1968) 81 Harv. L.Rev. 721, 756.)

In short, although the issue is one of first impression in California, federal authorities help us derive the following guidelines. A trial court may place reasonable conditions on a nonparty's intervention under section 387, consistent with its inherent authority to ensure efficient case management. Conditions may be placed both on permissive interveners and interveners of right. Where intervention is of right, however, a court has less leeway to limit a nonparty's participation. (See *Stringfellow, supra*, 480 U.S. at p. 382 (conc. opn. of Brennan, J.); 7C Wright, Miller & Kane, *supra*, § 1922.) Although restrictions of a "housekeeping" nature may be allowed—e.g., to avoid unnecessary duplication—these limitations may not impair an intervener of right from presenting its interest in the same manner as an original party. (See 7C Wright, Miller & Kane, *supra*, § 1922.)

23

We review the propriety of conditions imposed for abuse of discretion. (See *Columbus*, *supra*, 974 F.2d at p. 470; *In re Financial Oversight and Management Board for Puerto Rico* (1st Cir 2017) 872 F.3d 57, 64.) So long as there exists a reasonable justification for the condition imposed, the trial court's decision will not be disturbed. (See *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.) "Nevertheless, trial court discretion is not unlimited. 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' " (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

Turning to our record, the analysis here is not close. The trial court conditioned intervention by the ACLU and Media interveners on striking their requests for attorney's fees. Section 1021.5 permits an award of attorney's fees for litigation undertaken to serve an important public interest, as intervention here does. (*Pasadena Police*, *supra*, 22 Cal.App.5th at pp. 165−166; *Metropolitan Water*, *supra*, 42 Cal.App.5th at p. 303.) Once leave is granted, interveners stand on equal footing with the original parties, including their ability to request attorney's fees pursuant to section 1021.5. (*Stewart*, *supra*, 126 Cal.App.4th at p. 87.) Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees under section 1021.5 to a party that meets the statutory requirements is limited: fees must be awarded unless special circumstances would render an award *unjust*. (*Lyons*, *supra*, 136 Cal.App.4th at p. 1344.)

24

Given the weighty policy considerations that motivated the enactment of section 1021.5, we struggle to see how a court could reasonably condition even permissive intervention on entirely forgoing private attorney general fees. The interests served by this type of attorney's fee award—the desire to further litigation in the public interest—appear unrelated to whether a litigant intervenes permissively or as of right.[12] And whether intervention is permissive or compulsory, telling interveners they must file a separate lawsuit to seek attorney's fees under section 1021.5 would seem to interfere with the salutary objectives of intervention—i.e., avoiding delay and a multiplicity of suits. (*Good*, *supra*, 17 Cal.3d at p. 736.)

In any event, we need not resolve the broader question. A court has less discretion to restrict participation of by intervener of right, and the ACLU and Media interveners qualify for such intervention. It was an abuse of discretion to condition participation by interveners of right on forgoing their otherwise appropriate requests for statutory attorney's fees against the POAs under section 1021.5. We therefore reverse the order imposing that condition for intervention.

On remand, the ACLU and Media interveners are entitled to request attorney's fees under section 1021.5 against the POAs "for [their] work during all stages of this case, including the present appeal." (*Pasadena Police*, *supra*, 22 Cal.App.5th at p. 166.)

---

[12]    The same could be said for attorney's fees under Government Code, section 6259, subdivision (d), which serve "to encourage members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure." (*Pasadena Police*, *supra*, 22 Cal.App.5th at p. 168; see *Filarsky*, *supra*, 28 Cal.4th at p. 427 [fee-shifting incentivizes members of the public to seek enforcement of PRA rights].)

Many of the concerns raised by the POAs as to whether the interveners unnecessarily expanded the scope of the litigation, or whether their efforts were necessary to achieve the outcome, can be addressed in resolving the attorney's fee motion itself. (See *Whitley*, *supra*, 50 Cal.4th at p. 1226 ["the court may legitimately restrict the award to only that portion of the attorneys' efforts that furthered the litigation of issues of public importance"].) Suffice to say, the potential merits of the interveners' claims for attorney's fees "are far too complex to take up on (or serve as grounds to limit) intervention." (*Florida*, *supra*, 2011 U.S.Dist.Lexis 11180, *21.)

DISPOSITION

The February 15 order conditioning intervention by the ACLU and Media interveners on striking their requests for attorney's fees is reversed, and the superior court is directed to enter a new order granting intervention without that condition. The matter is remanded for further proceedings consistent with this opinion to permit the ACLU and Media interveners to request attorney's fees under section 1021.5 against the POAs. The ACLU interveners are entitled to recover their costs on appeal from the POAs. The Media interveners are entitled to recover from the POAs that portion of the appellate costs they incurred in their appeal against the POAs, but not any portion of costs incurred

as to their appeal against the City of Oceanside, City of El Cajon, or National City and their respective police chiefs.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.