Filed 7/14/21 Ali v. Auto Nation CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| |
|---|
| **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.** |

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GHANDI ALI, | D077323 |
| Plaintiff and Respondent, | |
| v. | |
| AUTO NATION, INC. et al., | (Super. Ct. No. 37-2018-00037616-CU-OE-CTL) |
| Defendants and Respondents; | |
| DEVONTE MITCHEM et al., | |
| Movants and Appellants. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge. Affirmed.

Matern Law Group, Matthew J. Matern, Launa Adolph, Debra J. Tauger and Kayvon Sabourian, for Movants and Appellants.

Ackermann & Tilajef, Craig J. Ackerman, Sam Vahedi; Winston Law Group, David S. Winston; Melmed Law Group and Jonathan Melmed, for Plaintiff and Respondent.

Fisher & Phillips, Christopher C. Hoffman and Megan E. Walker, for Defendants and Respondents.

INTRODUCTION

Devonte Mitchem and Niki Phuong Ngo filed a representative action against their employer Auto Nation, Inc. (Auto Nation) in April 2018. In July 2018, Ghandi Ali filed a separate, representative action against the defendants, identifying many of the same labor law violations. Ali and the defendants proceeded to mediation and reached a settlement. When they filed their joint motion for court approval of the settlement, Mitchem and Ngo moved to intervene in the matter as a right and, in the alternative, they sought permissive intervention. Mitchem and Ngo also objected to the settlement, arguing it was not fair. The court denied their requests to intervene, but it considered their objections before approving the PAGA settlement. Before the time elapsed for Mitchem and Ngo to appeal the denial of their requests to intervene, the settlement funds were distributed to the state and to the aggrieved employees.

Mitchem and Ngo appeal the denial of their requests to intervene, as well as the entry of judgment, arguing the settlement was improper and unfair. Ali and Auto Nation contend the court properly denied the requests to intervene, challenge Mitchem and Ngo's standing to appeal the judgment, question whether the appeal is moot in light of the distribution of settlement funds, and maintain that the court properly concluded the settlement was fair. We agree with Ali and Auto Nation that the court properly denied the requests to intervene. We question whether the parties to the settlement can avoid appellate review based on the distribution of settlement funds and whether Mitchem and Ngo have standing to appeal the judgment, but even

2

assuming Mitchem and Ngo have standing to challenge the judgment, we affirm because the court's approval of the settlement did not abuse its discretion.

BACKGROUND AND PROCEDURAL FACTS

On July 24, 2018, Ali filed a representative action pursuant to the Private Attorney General Act (PAGA) (Labor Code, § 2698 et seq.) against Auto Nation and several other related entities (the *Ali* matter). His complaint was brought on behalf of nine groups of allegedly aggrieved employees, including those who were paid on a commission basis, those who earned less than half their compensation from commissions, and those who had resigned or had been discharged. It alleged a variety of violations of the Labor Code and two wage orders, and it sought civil penalties.

Defendants filed their answer September 26, 2018. Defendants also filed a notice of related cases, identifying five other PAGA actions brought by different plaintiffs in state and federal court, three of which were pending. One of the pending cases had been filed on April 26, 2018 by Appellants Devonte Mitchem and Niki Phuong Ngo (collectively referred to as Mitchem hereafter).

On December 28, 2018, the court stayed the *Ali* matter for 60 days so that the parties could participate in mediation. In their February 21, 2019 joint case management statement, the parties indicated that a mediation session was scheduled for March 26, 2019. On March 29, 2019, Ali filed an amended notice letter with the Labor Workforce Development Agency (LWDA).

The parties in the *Ali* matter filed a joint case management statement April 25, 2019 in which they reported that they were in the process of

finalizing a settlement, which would be submitted for the court's review and approval in June 2019.

On June 6, 2019, the parties stipulated to allow Ali to file a first amended complaint, which Ali filed June 11, 2019. The first amended complaint named a number of Doe defendants and added Labor Code violations. It was brought as a representative action under PAGA on behalf of five groups of aggrieved current and former employees dating back to February 20, 2017: current nonexempt employees, current nonexempt employees paid on a commission-only basis, current employees who worked in shifts of more than four hours or a fraction thereof and who were paid on a commission draw basis and/or a commission only basis; current employees who worked during pay periods in which the pay did not exceed one and a half times minimum wage and/or employees who earned less than half their compensation from commissions and worked overtime; and employees who had been terminated or had resigned.

The parties filed a joint motion for approval of the representative PAGA settlement on July 1, 2019. The motion explained the parties had participated in an adversarial mediation process before an experienced mediator whose services were necessary to reach a settlement. It detailed the penalties they considered and discounted, explained that the settlement was dependent on post-mediation discovery, which had been completed, and it identified the risks of pursuing litigation in light of the strength of the claims and the use of a separate entity defense, which had been recently used successfully by the defendants in another case.

On August 22, 2019, Arnold Alix, a plaintiff in a different PAGA action against the defendants, filed an ex parte application for an order shortening time to hear his motion to intervene and to stay the action. In Alix's

4

memorandum, he noted that he had filed a class action and PAGA representative action on December 29, 2017 alleging similar violations.

On August 23, 2019, Mitchem filed an ex parte application to intervene or, in the alternative, for an order shortening time to hear the motion to intervene. In the memorandum of points and authorities, Mitchem argued he had previously filed a PAGA action and was entitled to intervene as a matter of right under Code of Civil Procedure[1] section 387, subdivision (b) as an aggrieved employee and designated proxy for the state, given that he had filed suit April 26, 2018. Mitchem argued in the alternative that discretionary intervention was proper.

Counsel for Mitchem explained he had discussed cooperating on the pending litigation with Ali's attorneys, but Ali's attorneys did not follow up. Mitchem had also scheduled mediation on a statewide basis for June 10, 2019 and stayed formal discovery pending that mediation. Auto Nation took the mediation off calendar on May 7, 2019, after it filed the joint case management statement indicating it was finalizing a PAGA settlement with Ali. Auto Nation rescheduled mediation with Mitchem for October 28, 2019. Mitchem learned of the proposed settlement on August 13, 2019 from Alix's attorney.

Concurrent with the motion to intervene, Mitchem filed objections to the proposed PAGA settlement. The objections argued the proposed settlement did not provide " 'genuine and meaningful relief' " because it amounted to approximately $2.50 per pay period in exchange for a release of claims, which Mitchem contended was not significant enough to deter violations. Mitchem maintained that Ali focused on the value of claims for

---

1    Further unspecified section references are to the Code of Civil Procedure.

5

commission-eligible employees but then reduced their value and did not calculate a maximum value for all individually-identified claims being released. He further contended that Ali's legal representation was inadequate because he did not analyze time or payroll records, did not attribute any value to claims that were added to the first amended complaint, and failed to consider the value of the separate entity defense.

The objections argued the settlement released claims dating back to February 20, 2017, which was not a date corresponding to Ali's initial PAGA Notice, and the release was overly broad because it extended the tolling period and released claims not raised in the original complaint. Finally, the objections contended that the parties to the settlement had concealed the negotiations while extinguishing claims raised by would-be intervenors and asked the court to scrutinize the settlement as a potential reverse auction.

Ali opposed the requests to intervene on both factual and legal grounds. Ali's counsel reported proposing a joint prosecution to Mitchem's counsel, and he reported that Mitchem's attorney failed to accept the offer, instead scheduling separate mediation. Ali also argued Mitchem's motion to intervene lacked merit because it was untimely, and he had no personal or individual interests in the PAGA action, and because Mitchem did not have the right to object.

The court heard from the parties, and on August 28, 2019, it denied the request for an order shortening time on the motions to intervene.

After hearing arguments about the proposed settlement, including ones raised at the hearing by Mitchem, on September 20, 2019, the court took the matter under submission.

On October 17, 2019, Mitchem filed a motion for leave to intervene in the matter. The corresponding memorandum argued he was entitled to

6

intervene as a matter of right, and in the alternative, he met the requirements for permissive intervention. Ali and the defendants opposed the motion.

On October 24, 2019, the court granted the motion to approve the PAGA settlement. In its order, the court noted that several nonparty aggrieved employees filed objections to the settlement; it noted they were not entitled to be heard, but it nonetheless considered their objections and found them to lack merit. The court explained the settlement complied with Labor Code requirements and was fair because it complied with the purpose of PAGA to enforce labor laws and collect penalties on behalf of the state.

The court heard oral arguments on Mitchem's motion to intervene on November 8, 2019 and took the matter under submission before denying it November 12. The court explained it had already considered the substance of the nonparties' objections and concluded they lacked merit. It also concluded that Ali had adequately represented the state as its proxy under PAGA and that Mitchem did not demonstrate entitlement to mandatory intervention or meet the requirements for permissive intervention.

The court entered judgment approving the proposed PAGA settlement and retaining jurisdiction over the action to effectuate and enforce its terms.

On December 20, 2019, Mitchem moved to set aside and vacate the judgment. The court denied the motion.

On December 23, 2019, Mitchem appealed the order denying the ex parte application for an order shortening time on the motion to intervene, the order approving the PAGA settlement, the order denying the motion to intervene, and the judgment.

Ali filed a motion to dismiss the appeal as moot, arguing the settlement terms had already been satisfied and the funds had been distributed in December 2019.  Mitchem opposed the motion.

## DISCUSSION

## I

## PRIVATE ATTORNEY GENERAL ACT (PAGA)

We begin with a brief discussion of the law.  Before the Legislature enacted PAGA, only the state could sue for civil penalties.  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*).)  Government enforcement was problematic because prosecutors devoted their time to other priorities.  (*Id.* at p. 81.)  So, in 2003, the Legislature enacted PAGA and "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  (*Arias v. Superior* Court (2009) 46 Cal.4th 969, 980 (*Arias*).)

PAGA deputizes employees who have suffered a Labor Code violation or violations of Industrial Welfare Commission (IWC) wage order provisions, permitting them to bring a representative lawsuit on behalf of the state to enforce labor laws.  (*Kim*, *supra*, 9 Cal.5th at p. 81; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386 (*Iskanian*).)  Although an aggrieved employee is the named plaintiff in a PAGA action, PAGA disputes are between the state and the employer, not between the

8

employee and the employer. (*Iskanian*, at p. 386; *Arias*, *supra*, 46 Cal.4th at p. 986 [plaintiff represents same legal rights and interests as state labor law enforcement agencies].)

Before filing a PAGA lawsuit, an aggrieved employee must file a notice with the LWDA and notify the employer of the specific violations and theories to support the claims. (Labor Code, § 2699.3, subd. (a)(1)(A).) This gives the LWDA the opportunity to investigate the alleged violations if it so chooses. (*Kim*, *supra*, 9 Cal.5th at p. 81.) Once the procedural prerequisites are met, the aggrieved employee can bring a PAGA action. (See Labor Code, § 2699.3, subd. (a)(1); *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 375.)

If successful, the PAGA penalties are distributed with 75 percent to the LWDA and 25 percent to the aggrieved employees. (Labor Code, § 2699, subd. (i); *Arias*, *supra*, 46 Cal.4th at pp. 980-981.)

Overlapping PAGA actions may be brought by different employees who allege the same violations and use the same theories. (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866-867.) However, once the claims have been resolved by any of the PAGA plaintiffs and judgment has been entered, the government and all nonparty aggrieved employees are bound by the judgment. (*Ibid*; see *Iskanian*, *supra*, 59 Cal.4th at p. 386 [aggrieved employees bound by judgment in PAGA action]; *Arias*, *supra*, 46 Cal.4th at p. 986.)

II

MOTIONS TO INTERVENE

We next turn to the orders denying Mitchem's requests to intervene because those are the foundation upon which the remaining challenges to the judgment are built. Section 387 allows for either mandatory intervention,

9

governed by subdivision (d)(1), or permissive intervention, governed by subdivision (d)(2). The appropriate standard of review for the denial of a mandatory intervention is subject to dispute; several appellate courts have implicitly applied the de novo standard of review, but at least one has reviewed for abuse of discretion. (*Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1425 (*Siena Court*).) We review the denial of permissive intervention for an abuse of discretion. (*Reliance Insurance Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386 (*Reliance*); *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 345.) Under this standard of review, we do not disturb the trial court's exercise of discretion unless it has led to a miscarriage of justice. (*City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036 (*City and County of San Francisco*).) The appellant bears the burden of establishing that the court "exceed[ed] the bounds of reason, all of the circumstances before it being considered." (*Id*. at p. 1037)

## A. *Timeliness*

Both mandatory and permissive intervention require a motion to intervene to be made "upon timely application." (§ 387, subds. (d)(1), (2); *Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 736 (*Edwards*).)

Mitchem argues that the date for determining the timeliness is when the third party knew or should have known his interests were not being adequately represented, not when he first became aware of the competing or overlapping suit. (*Ziani Homeowners Assn. v. Brookfield Ziani* LLC (2015) 243 Cal.App.4th 274, 281.) He contends his application was timely because he did not know his interests were not being adequately represented until Ali and the defendants filed their allegedly collusive joint motion to approve the

10

PAGA settlement because the PAGA settlement released a claim under a code section not identified in Ali's original PAGA notice and complaint. He implies that he could not have known Ali would release those claims before Ali filed the motion to approve the settlement.

The court did not make an express finding regarding timeliness. Independent review leads us to conclude the motion was not timely under the circumstances before the court, and the court's denial was therefore proper under either the de novo or abuse of discretion standards of review.

Mitchem acknowledges that he could have coordinated or collaborated with Ali early in the case, when it was immediately clear from Ali's original complaint that Labor Code section 2802 was not included in the violations for which Ali was seeking penalties. Mitchem's attorneys also could have assessed the scope of alleged violations during the discussions with Ali's attorneys about coordinating their actions. Mitchem implies that he did not have an opportunity to consolidate or coordinate the actions because, although his attorneys were agreeable to working with Ali's attorneys and never communicated an unwillingness to do so, Ali's attorneys did not follow up. But Mitchem does not go so far as to say that he offered to consolidate or that his attorneys followed up with Ali's to pursue coordinating the actions. In other words, it appears that Mitchem's attorneys did not inform Ali's attorneys that they were willing to cooperate on the PAGA litigation.

As a PAGA plaintiff himself, Mitchem knows that an aggrieved employee can seek civil penalties for violations the employee does not personally experience. (*Kim*, *supra*, 9 Cal.5th at p. 85.) Thus, Mitchem should have known earlier than the parties' request for approval of their settlement that Ali's activities could bind Mitchem even as to a Labor Code

11

violation not expressly listed in the initial complaint if Ali reached a settlement agreement first and amended the complaint and PAGA notice.

If Mitchem were concerned that Ali would not represent his interests as an aggrieved employee or member of the public after the initial communication with Ali's attorneys, he could have intervened at that point in the litigation instead of more than a year later, only after settlement had been reached. And the changed scope of Labor Code violations, as well as how far back they were related, was evident in June 2019, when Ali filed a first amended complaint.

Another reason Mitchem offers for the timing of his request to intervene is his suggestion that Ali behaved secretly and collusively by negotiating with the defendants without informing Mitchem of his plans. But Mitchem cites no authority that requires parties to a PAGA action to inform parties to related cases of their plans to negotiate a settlement. And Mitchem similarly planned to negotiate with Auto Nation in mediation on a statewide basis in his own, separate action. It appears that Mitchem's failure to intervene earlier was less about lack of information and more about strategy.[2]

Mitchem's request to intervene was not made upon timely application; thus, the denial was proper. But even were the request timely, as we next explain, the court did not err because Mitchem did not meet the other requirements for either mandatory or permissive intervention.

---

[2] The judgment awarded attorney fees to Ali's attorneys in the amount of $283,666.67. Had Mitchem reached statewide settlement with the defendants, his attorneys would have been entitled to attorney fees. (See Labor Code, § 2699, subd. (g).)

12

B. *Mandatory Intervention*

Section 387 subdivision (d)(1) provides that upon a timely application, the trial court shall permit a nonparty to intervene if there is a legal provision that confers an unconditional right to intervene or "[t]he person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (§ 387, subds. (d)(1)(A) & (B).) In evaluating whether mandatory intervention applies, courts do not consider whether intervention would expand the issues in the case, create delay, or adversely affect the original parties. (*California Physicians' Service v. Superior Court* (1980) 102 Cal.App.3d 91, 96.) "The threshold question is whether the person seeking intervention has 'an interest relating to the *property* [*or*] *transaction* which is the subject of the action.'" (*Siena Court*, *supra*, 164 Cal.App.4th at pp. 1423-1424.)

1. *Interest Relating to Subject Property or Transaction*

In a PAGA action, the employee acts as a proxy or agent for the state labor law enforcement agencies and represents the legal rights and interest of those agencies to benefit the public, not to benefit any private parties. (*Amalgamated Transit Union, Local 1756, CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003 (*Amalgamated*).) Thus, even though PAGA plaintiffs are eligible to receive part of the recovery as compensation (Labor Code, § 2699, subd. (i) [25 percent of recovered penalties distributed to aggrieved employees]), the employee does not act as an agent for other employees

13

(*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 753 (*Huff*)), and PAGA "does not create any property rights or any other substantive rights" (*Amalgamated*, at p. 1003).

Mitchem sought to intervene in the *Ali* matter as an aggrieved employee, as a designated proxy in a different lawsuit, and as a named plaintiff in a separate PAGA action. But none of these roles gives him the right to intervene because the real party in interest in a PAGA action is the state (*Iskanian*, *supra*, 59 Cal.4th at p. 380), and even though an aggrieved employee can file suit on behalf of the government, doing so does not make the employee a real party in interest (*Amalgamated*, *supra*, 46 Cal.4th at p. 1003; *Arias*, *supra*, 46 Cal.4th at p. 986; *Huff*, *supra*, 23 Cal.App.5th at p. 757).

Mitchem also contends he has an interest in the underlying litigation because he has an interest in defendants' employment practices, which constitute transactions. And he argues that approval of the settlement would impair those interests because it would preclude him from pursuing PAGA claims on behalf of the state and other aggrieved employees. His position is that as an overlapping or alternative proxy for state agencies, he is entitled to intervene. But he does not detail why his interest in doing so supersedes the interests of the proxy in the current matter, and he cites no law that supports this position.

Because Ali was already acting as a proxy for the state and adequately representing the state's interests,[3] Mitchem's role as an alternative proxy for the state or as a proxy in a different case does not demonstrate any direct interest in the settlement, as that role is already filled by Ali. The state could not intervene in the action because it was already a party.

---

[3]     We address the adequacy of Ali's representation *post*.

Mitchem next argues he has an interest in the transaction underlying the litigation between Ali and Auto Nation because he has an interest in the defendants' employment practices. This interest derives from his roles as an aggrieved employee and a member of the public, neither of which gives Mitchem a specific interest in a PAGA matter. And Mitchem's individual or personal interest in enforcing those employment practices is not at stake in the *Ali* matter because Mitchem's personal claims are not impacted by a PAGA settlement. (See *Kim*, *supra*, 9 Cal.5th at p. 87 [PAGA claims have no individual component]; *Amalgamated*, *supra*, 46 Cal.4th at p. 1003 [PAGA actions are not for benefit of private parties]; *Lopez v. Friant & Associates, LLC* (2017) 15 Cal.App.5th 773, 780 (*Lopez*) [civil penalties under PAGA do not include statutory damages recoverable by individual plaintiffs].) Because the settlement did not reach the personal claims of nonparties and only addressed the state's enforcement of labor laws, Mitchem's personal interests were not impeded or impaired.

Finally, Mitchem contends that the court incorrectly considered whether his rights outside of PAGA would be implicated rather than asking if he would be prejudiced by his inability to seek penalties as a proxy under PAGA. Mitchem cannot be prejudiced personally for being unable to collect civil penalties because he has no personal right to them. (*Amalgamated*, *supra*, 46 Cal.4th at p. 1003 [PAGA plaintiff stands in for the government to collect the penalties on behalf of the state]; *Huff*, *supra*, 23 Cal.App.5th at p. 757 [same].) The penalties distributed to a PAGA plaintiff are offered to incentivize the employee bringing a suit (*id.* at p. 760), not to create any right personal employee to recovery. And because the state's interests were represented, he was not prejudiced as a proxy.

15

## 2. *Adequacy of Representation*

In addition to failing to demonstrate any interest relating to the underlying transactions beyond the potentially duplicative or overlapping role as a state proxy, Mitchem failed to demonstrate Ali inadequately represented the interests of the state in pursuing the penalties.

" '[W]here an applicant for intervention and an existing party "have the same *ultimate objective,* a presumption of adequacy of representation arises." ' [Citation.]" (*League of United Latin Am. Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1305.)[4] When a proposed intervenor disagrees with litigation strategy or legal tactics, and not with any substance, courts are reluctant to give the intervenor equal status. (*League of United Latin Am. Citizens,* at p. 1306.) Thus, the question is not whether Mitchem would do a better job than Ali in representing the interests of the state; the statute requires only adequate representation. (§ 387, subd. (d)(1)(B).)

As we have noted, because Mitchem and Ali each represent the interest of the state labor agencies to ensure compliance with labor law, their interests are identical. Mitchem claims that were he permitted to intervene, he would retain an expert to review payroll and timekeeping records to assess the underlying claims' value, consistent with how class actions have been handled, and that this would lead to a higher settlement amount.[5] But he

---

4    Federal Rule of Civil Procedure 24 is the substantive counterpart to California's intervention rule, and California takes guidance from federal law in assessing the requirements of intervention. (*Edwards, supra,* 29 Cal.App.5th at pp. 730, 732).

5    Mitchem cites two federal district court cases to argue that Ali was inadequate because "a statistically significant sampling of time and payroll records" along with the "analysis of those records. . . . is necessary 'to prosecute this action, which seeks to enforce California's labor laws.' (*Hill v.*

16

provides no authority that a PAGA plaintiff must follow class action strategies and approaches to adequately represent the state's interests or that this is an appropriate comparison for determining adequacy of representation. These contentions do not demonstrate *inadequate* representation. Aside from this, Mitchem does not point to any conduct that demonstrates that Ali's representation was not adequate.

Mitchem appears to argue that Ali's representation was inadequate because the settlement was unfair. But as we detail *post*, the court did not abuse its discretion in approving the settlement, which was genuine and meaningful, and consistent with the goal of benefitting the public by enforcing labor laws. (See *O'Connor v. Uber Techs., Inc.* (N.D.Cal. 2016) 201 F.Supp.3d 1110, 1133 (*O'Connor*).)

### C. *Permissive Intervention*

Mitchem does not fare better in his bid for permissive intervention. Permissive intervention is available when a would-be intervenor meets four criteria: "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not

---

*Eddie Bauer* (C.D.Cal. [2007]) 242 F.R.D. 556, 563.)" The Minnesota district court case, *UnitedHealth Group v. Columbia Casualty Company* (D. Minn. 2010) 2010 WL 11537514, at p.*25, does not state that such a sampling is required; it says that one way to demonstrate a class action settlement's reasonableness is through such a sampling. And in *Hill,* the court was addressing a motion to compel discovery of 51 requests for production of documents. (*Hill*, at pp. 559-560.) The district court compelled documents pertaining to hours, wages, business-related expenses, repayment of wages to employer, termination of wages, meal breaks and rest breaks because they were necessary for class certification as well as to enforce the labor laws. (*Id.* at p. 563.) Although Mitchem implies this means time and payroll records are always necessary to pursue civil penalties, the court did not so hold. It simply concluded those documents were necessary for one or both purposes for which that particular lawsuit was brought. (See *id.* at p. 563.)

17

enlarge the issues of the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Reliance*, *supra*, 84 Cal.App.4th at p. 386.) "The permissive intervention statute balances the interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation unburdened by others." (*City and County of San Francisco*, *supra*, 128 Cal.App.4th at p. 1036.)

### 1. *Proper Procedures & Interest in the Action*

Setting aside the issue of timeliness, which we addressed *ante*, the parties do not dispute that Mitchem complied with the remaining procedural requirements for permissive intervention. The court concluded, however, that Mitchem had no direct and immediate interest in this action and lacked standing as a representative of the state, presumably because the state's interests were already represented by Ali. And the trial court noted that Mitchem did not have any substantive rights under PAGA as an aggrieved employee. We agree.

As we have explained, only the state holds an interest in the enforcement of penalties under PAGA; aggrieved employees have no individual substantive or property rights in a PAGA action. (*Amalgamated*, *supra*, 46 Cal.4th at p. 1003 [PAGA is purely procedural].) While a PAGA judgment may result in financial benefit to employees who receive a portion of the recovery in a PAGA action (Labor Code, § 2699, subd. (i) [25 percent of recovery is paid to aggrieved employees]), this is a result of enforcing the law, not a direct benefit to private parties. (See *Arias*, *supra*, 46 Cal.4th at p. 986.) Mitchem argues that there is an immediate interest here because approving the PAGA settlement would prevent him from pursuing the same claims on behalf of the aggrieved employees under the doctrine of res

18

judicata.  Although the judgment here binds the state on behalf of the aggrieved employees (*Arias*, at p. 986 [judgment under PAGA binds employee and state labor law enforcement agencies]; *Iskanian*, *supra*, 59 Cal.4th at p. 381 [a nonparty represented by the agency is bound by the judgment]), employees' interests are already represented in this action by the state's proxy, Ali.  Thus, Mitchem fails to meet this element of permissive intervention.

2. *Enlarged Issues and Reasons for Intervention as Compared to Opposition*

None of the parties addresses the third element in any detail.  The defendants claim that if the intervention results in undoing the settlement, that would be an enlargement of the issues.  But we fail to see how an intervention for the purpose of challenging the fairness of a PAGA settlement agreement before the trial court, which has a gatekeeping function of approving the settlement, enlarges the issues.  This already exists as part of the court's tasks.

The court concluded that Mitchem did not meet the fourth element, whether Mitchem's desire to protect the state's rights outweighed the opposition of the parties already involved in the action.  Because Mitchem and Ali represented the same interests, the state's interests in enforcing labor laws, Mitchem's desire to be the individual responsible for protecting those rights does not outweigh the opposition raised by those already tasked with doing so.  Given the work the parties had already put into mediating the settlement and the adversarial nature of the settlement negotiations, the court's conclusion on this point was not arbitrary or capricious.  (See *City and County of San Francisco*, *supra*, 128 Cal.App.4th at p. 1036.)  Accordingly, even without considering timeliness, the court did not abuse its discretion in denying the request to intervene under the permissive intervention statute.

19

Finally, even had the court improperly denied Mitchem's request to intervene, because it considered the substance of his objections before approving the settlement, neither Mitchem nor the state as the real party in interest was harmed by the court denying his requests to intervene.

III

SETTLEMENT FAIRNESS

A. *Standing*

The parties to this appeal do not dispute that Mitchem had standing to challenge the denial of his requests to intervene. And Mitchem acknowledges that no California Court of Appeal has determined who has standing to appeal a PAGA settlement. But he argues we should consider him an aggrieved party for purposes of section 902 because he meets the definition of "aggrieved employee."

Labor Code section 2699, subdivision (a) provides that any "aggrieved employee" has standing to pursue a PAGA action as a proxy for the state. It is a term of art used in the PAGA statute to describe "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (Labor Code, § 2699, subd. (c); *Kim*, *supra*, 9 Cal.5th at p. 87.) Mitchem contends that in *Kim* the Supreme Court "put to rest" "[t]he issue of whether an employee has standing to challenge a PAGA settlement." But *Kim* does not hold that any aggrieved employee can challenge a PAGA *settlement*; it holds that an employee does not lose standing as a PAGA plaintiff after settling individual claims. (*Kim*, at p. 93.) Neither *Kim* nor the PAGA statute addresses whether an aggrieved employee has the right to challenge the fairness of a PAGA settlement on appeal.

Under section 902, any "party aggrieved" may appeal a judgment, and in the context of this statute, " 'one who is denied the right to intervene in an

20

action ordinarily may not appeal from a judgment subsequently entered in the case. [Citations.] Instead, he may appeal from the order denying intervention.' [Citation.]" (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263.) *Hernandez* held that unnamed class members could not appeal a class judgment, settlement, or attorney fees award unless they had intervened in the action, (*ibid*) but it did not address PAGA. Although Mitchem appears to be an "aggrieved employee," it is not clear that he is an "aggrieved party" with respect to judgment.

We decline to wade into this issue because, even assuming Mitchem has standing to challenge the PAGA settlement as a third party non-intervenor member of the public, we conclude the court did not abuse its discretion approving it.

### B. *Mootness*

Ali and Auto Nation each contend this appeal is moot because there is no actual or legal remedy available, as the funds have been distributed to thousands of individuals and the real party in interest, the state, accepted the benefits of the settlement.[6]

---

[6]    Mitchem submitted four requests for judicial notice: Request for Judicial Notice in support of the appeal, filed October 26, 2000 (RJN 1); Supplemental Request for Judicial Notice in Support of Appeal, filed November 6, 2000 (SRJN); Request for Judicial Notice in Opposition to Motion to Dismiss, filed November 6, 2000 (RJN 2), and Second Supplemental Request for Judicial Notice in Support of Appeal, filed April 23, 2021 (SSRJN). RJN 2 and SRJN ask us to take judicial notice of four documents related to the depublication of *Starks v. Vortex Industries, Inc.* (2020) 53 Cal.App.5th 1113, depublication granted (2020) 2020 Cal.Lexis 8676, and those parties' requests for review by the Supreme Court. The fifth exhibit attached to SRJN is a declaration from a representative of the entity that managed the settlement funds in the *Ali* matter. It details the postsettlement distribution of funds and confirms the number of aggrieved employees who were issued settlement checks. The fifth item listed in RJN 2

21

We question whether the LWDA's acceptance of its share of the judgment proceeds is sufficient to moot the appeal in light of Mitchem's challenge to the court's ruling on intervention and request to vacate the judgment approving the settlement. We note that the real party in interest, the LWDA, agreed to the terms of the settlement before depositing or distributing the judgment funds, and the challenge here is by a party claiming the same rights and status as the LWDA. But we also recognize the formal requirement that administrative agencies deposit funds within five working days of receipt (Cal. Dept. of General Services, State Admin. Manual (2015) § 8032.1 [accumulated money will not remain undeposited for more than five working days]), and that a party does not lose its right to appeal a judgment through conduct arising under compulsion or risk of forfeiture (*Lee v. Brown* (1976) 18 Cal.3d 110, 116). And we find Mitchem's argument that parties to a settlement could always avoid appellate review by disbursing funds before the appellate court could review the challenges thereto persuasive, particularly where, as here, the settlement agreement required distribution of funds before the period of time to appeal lapsed. Because the challenge to the settlement's fairness here is so tightly tied to the denial of the right to intervene, we treat Mitchem as having standing to appeal both the intervention and, consequently, the court's approval of the

_____

is the alleged number of PAGA notices filed in the year 2019 and between January 1, 2020 and October 31, 2020. We do not rely on *Starks* in reaching our decision, and we deny RJN 2 and SRJN as irrelevant or unnecessary to our ultimate conclusions. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418 (*Deveny*) ["[A] litigant must demonstrate that the matter as to which judicial notice is sought is both relevant to and helpful toward resolving the matters before this court"].) Mitchem's SSRJN, which seeks notice of documents and briefs filed by individuals and entities in other cases to show "that this appeal is not moot" and to detail the positions taken in other cases addressing similar issues, is denied for the same reasons. (See *ibid.*)

22

settlement he sought to challenge through that intervention. We decline to dismiss the matter as moot, instead affirming the court's judgment, as we next discuss.

## C. *Settlement Fairness*

Labor Code section 2699, subdivision (*l*)(2) requires the trial court to review and approve a PAGA settlement, and the Supreme Court has commented that in doing so, the court "ensur[es] that any negotiated resolution is fair to those affected." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 549.) There is no published California authority that has identified the standard a trial court should employ in evaluating PAGA settlements. (See *Flores v. Starwood Hotels & Resorts Worldwide* (C.D.Cal. 2017) 253 F.Supp.3d 1074, 1075 (*Flores*).) The federal district court in *O'Connor* considered whether the relief provided by a PAGA settlement's terms is "genuine and meaningful, consistent with the underlying purpose of the [PAGA] statute to benefit the public."[7] (*O'Connor*, *supra*, 201 F.Supp.3d at p. 1133.) There is also no authority stating the appellate standard of review for evaluating the approval of a PAGA settlement.

Although the purposes of and requirements for reviewing class action and PAGA settlements differ, as we explain more fully *post*, we will review the trial court's approval of the PAGA settlement and corresponding entry of

---

[7] Among other things, Mitchem proposes a standard that requires the court to "weigh the full monetary value of relevant penalties" in evaluating a PAGA settlement. The proposed standard is taken from an amicus brief filed by the Labor Commissioner in *Price v. Uber Technologies, Inc.* (L.A. Sup. Ct., No. BC554512), which Mitchem asks us to take judicial notice of in RJN 1. We decline because the brief was filed in an unrelated matter and would not be helpful to our decision here. (See *Deveny*, *supra*, 139 Cal.App.4th at p. 418.) The proposed requirement has not been adopted by the Legislature or any published case law.

23

judgment here for an abuse of discretion. We apply this standard because the statute does not detail specific requirements for a trial court's review, leaving the court to exercise its judgment and discretion to assess whether the settlement achieves the goals of PAGA (see *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 695 [explaining this standard is based on an impartial discretion guided by fixed legal principles]; *Huff*, *supra*, 23 Cal.App.5th at p. 756 [PAGA goal is to enforce labor laws]), and because the task at hand asks us to consider the propriety of that discretionary decision.

In the class action context, trial courts consider whether a settlement is fair, adequate, and reasonable. (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118.) They consider the substance of the proposed settlement to avoid fraud, collusion, or unfairness to the class. (*Id.* at p. 1117.) Trial courts have broad discretion, and their determination is reviewed for abuse of discretion. (*Id.* at p. 1118.) " 'To merit reversal, both an abuse of discretion by the trial court must be "clear" and the demonstration of it on appeal must be "strong." ' " (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 743.)

However, the court's gatekeeping function in the class action context differs from its role in reviewing PAGA cases. In class actions, courts have a fiduciary duty to protect the interests of absent class members, whose individual claims for wrongfulness will be discharged. (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 [court acts as guardian of rights of absentee class members].) In this role, courts conduct an "independent assessment of the adequacy of the settlement terms," which requires them to have sufficient data and information about the amount in controversy and the realistic range of outcomes. (*Id.* at p. 132.) Courts consider a variety of factors in conducting this analysis, including whether the settlement is

24

negotiated at an arm's length, whether there is sufficient discovery and information to permit parties and the court to act intelligently, whether the attorneys have experience with the type of issues, and whether the number of objectors is small. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800-1801.)

But a PAGA representative action is "not akin to a class action"; it "is a species of *qui tam* action." (*Flores*, *supra*, 253 F.Supp.3d at p. 1076.) When reviewing a PAGA-only settlement, courts do not consider the value of individuals' claims for damages because a PAGA settlement does not release those claims. (*Kim*, *supra*, 9 Cal.5th at p. 87 [PAGA claims have no individual component]; *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 197-198 [PAGA damages limited to civil penalties].) "The state's interest in such an action is to enforce its laws, not to recover damages on behalf of a particular individual." (*Huff*, *supra*, 23 Cal.App.5th at p. 760.) Instead of focusing on fair recovery for individual claims, the goal of PAGA enforcement is to achieve "maximum compliance with state labor laws." (*Huff*, at p. 756.) To the extent that a court is tasked with evaluating whether the PAGA settlement is genuine and meaningful, there are no specific factors the court must use.

Mitchem identifies three alleged deficiencies in the settlement, which he contends demonstrate the agreement is not genuine and meaningful, consistent with the underlying purposes of PAGA. We address each in turn.

### 1. *Sufficiency of Available Information*

Mitchem contends that the trial court did not have sufficient information from which it could evaluate the quality of the settlement. Although there is no published authority that requires independent

25

evaluation of the fairness of a PAGA settlement to the parties affected,[8] the parties to the *Ali* matter provided the trial court with sufficient information for it to conclude that the settlement was genuine and meaningful.

Prior to mediation, the defendants provided Ali with the number of nonexempt employees and the number of pay periods for commissioned and noncommissioned employees, as well as itemized wage statements and employment policies. This information was a starting point to evaluate the possible penalties, which are based on pay period and class of aggrieved employees. (Labor Code, § 2699, subd. (f).)

The parties participated in an adversarial mediation that required the guidance of an experienced mediator to reach agreement. During mediation, they considered penalties covering a possible 200,935 pay periods during the relevant time period. They focused on the value of claims for the commission-

---

8      Mitchem points to *O'Connor* to argue the trial court erred because it did not weigh the full monetary value of the relevant penalties to determine if the proposed penalties would effectively minimize any economic advantage to the employer. Although we will conclude the court had sufficient information to draw conclusions about the recovery deterring labor law violations, we separately note here that in *O'Connor* the court was not tasked with simply considering the likely impact of the PAGA penalties on employer behavior because the parties there negotiated a class settlement as well. The court's concern in *O'Connor* was that there could be "temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip," so that the rights of nonclass members could be essentially "waived for little additional consideration in order to induce the employer to agree to a settlement with the class." (*O'Conner*, *supra*, 201 F.Supp.3d at p. 1134.) Notably, the LWDA opposed the PAGA settlement there, arguing that there was no rational basis for the PAGA settlement amount, which was set at 0.1 percent of the potential verdict value. (*Id.* at p. 1135.) The court concluded the parties had "treat[ed] the PAGA claim simply as a bargaining chip," even though it was worth more than half the full verdict value. (*Ibid.*)

26

eligible employees and calculated it, without stacking penalties,[9] to equal $1,186,200. They focused on this group of aggrieved employees because they agreed that defendants would likely have prevailed on the noncommissioned employee claims during the pay periods at issue based on a review of the documentation, which indicated the defendants had complied with the law. This resulted in dismissing from penalty consideration claims for 6,500 noncommissioned employees, though they were included in the complaint as aggrieved employees. The parties thus considered the total number of pay periods likely to show liability was 5,931. At $100 per pay period, the maximum value of the claims was between $593,100 (for the 5,931 identified employees) and $1,186,200 (for all commission-eligible employees, without regard to likely liability). After accounting for the likely number of pay periods in which violations occurred and negotiating at an arm's length, the parties agreed on a net PAGA penalty payment totaling $519,800.62, primarily relying on the claims of identified employees. This also took into consideration the discretionary nature of the civil penalties and the fact that defendants had changed their commission payment plans shortly before Ali

---

[9]    "Stacking" penalties occurs when a civil penalty is recovered for each violation within a single pay period. Ali's attorney noted that no appellate court had ruled on the issuing of stacking and argued to the trial court that the availability of stacking, particularly in a PAGA settlement, is unclear because Labor Code section 2699, subdivision (f) references "a" penalty for "a" violation, while subdivision (g) references "the" civil penalty on behalf of employees against whom "one or more of the alleged violations."

sent the LWDA a PAGA notice, reducing possible liability for that group.[10] The settlement provided for one credit for each period worked for all aggrieved employees plus four pay period credits for those who were commission-only employees, based on the comparative strength of those claims, demonstrating the parties evaluated the strengths and weaknesses of claims. And the mediated settlement agreement was subject to confirmatory discovery, which the parties completed before seeking approval.

The parties also presented to the court information about the potential strengths and weaknesses of the PAGA civil penalties claims by explaining the risk factors that could preclude any recovery of penalties, including a separate entity defense, which defendants had successfully litigated to summary judgment in another case. They noted the complexities, expenses, and duration of continued litigation and provided the court with their analysis and reasoning. Given the information provided to the court, we cannot say it lacked sufficient information to draw its conclusion, thereby abusing its discretion.

## 2. *Scope of Release*

Mitchem next contends the scope of the release was unduly broad, so it was improper for the court to approve its terms. Mitchem's contention is based on two concerns he raised in his objections, and which the trial court considered before reaching its conclusion. First, he argues the release impermissibly extended beyond the time period for which Ali was authorized by the state to seek PAGA penalties because it covered violations dating back

---

[10] RJN 1 is denied. The first two items are documents in the record, so granting judicial notice would be duplicative and unnecessary. The fifth through seventh items are documents from Mitchem's suit against the defendants and are not helpful to our resolution of the issues before us. (See *Deveny, supra*, 139 Cal.App.4th at p. 418.)

28

to February 20, 2017 when the PAGA notice only allowed for Ali to make claims dating back to May 25, 2017. Second, Mitchem contends the release is overbroad because it includes predicate Labor Code violations not included in the original PAGA notice or the original complaint.

A PAGA notice is required to provide reasonably detailed facts and theories and to identify aggrieved employees, but plaintiffs are not expected to know every potential fact, future theory, or even group of aggrieved employees at the time they file this notice; this information will become more complete through discovery.[11] (*Cardenas v. McLane Foodservices, Inc.* (C.D.Cal. 2011) 796 F.Supp.2d 1246, 1261.) The reason for including the information in the PAGA notice is so that the LWDA has a sufficient basis to investigate the aggrieved employees' allegations. (*Kim*, *supra*, 9 Cal.5th at p. 81.) Regardless, the administrative requirements were met here by virtue of Ali's amendment to his PAGA claim notice and submission of the first amended complaint, which addresses both the timing and scope of violations that Mitchem questions.

Additionally, statute of limitations and administrative exhaustion requirements are affirmative defenses subject to forfeiture or waiver by a defendant. (See *Moor v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 382-383 [statute of limitations defense is waived if not timely asserted]; *Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1347-1348 [waiver of failure to exhaust administrative remedies]; *People ex rel. DuFauchard v. U.S. Financial Management, Inc.* (2009) 169 Cal.App.4th 1502, 1512 [exhaustion requirements not raised in trial court deemed

---

[11] We deny Ali's request for judicial notice, raised in footnote 2 of his respondent's brief, citing to the Department of Industrial Relation's PAGA webpage, which includes instructions for supplementing a PAGA notice.

29

forfeited on appeal].)  And there is no prohibition on extending the release period to cover concurrent claims.  (See *Edwards*, *supra*, 29 Cal.App.5th at p. 730 [denying intervention when PAGA suit was amended to extend time to cover concurrent claims].)  Here, defendants agreed to the terms of settlement, and the LWDA received notice and did not seek to object or otherwise comment regarding the concerns raised here.[12]

Mitchem contends the added claims must be closely scrutinized to verify adequate representation of affected employees.  But this argument misses the mark; no employees' rights are affected because they do not release their personal employment claims in a PAGA settlement agreement. (*Kim*, *supra*, 9 Cal.5th at p. 87 [no individual component to PAGA]; *Lopez*, *supra*, 15 Cal.App.5th at p. 780 [PAGA penalties do not include individual plaintiffs' damages].)

Finally, Mitchem implies that the parties did not adequately explore and evaluate the additional predicate violations, suggesting that Ali was not sufficiently adversarial in representing the state on these additional claims. But Mitchem offers no evidence that shows Ali inadequately represented those specific claims, and the evidence indicates the negotiations were adversarial.  The court did not abuse its discretion in approving the settlement based on the scope of the release or the time period it covers.

### 3. *Reverse Auction*

Although Mitchem accuses the defendants of secretly negotiating their settlement without first notifying Mitchem of their plans, he provides no evidentiary basis for his claim that this settlement should be viewed as a

---

[12]    Mitchem's reply brief argument that he has standing to assert this defense is not persuasive because Mitchem's proxy standing in a different matter is not co-equal with Ali's proxy standing in this case, as we have discussed *ante*.

reverse auction. Mitchem also argues that Auto Nation's act of rescheduling its mediation with Mitchem for a date after the hearing on the settlement approval lacked candor and is evidence of reverse auction. But Mitchem was aware of the pending litigation between Ali and the defendants and opted not to seek consolidation or coordination of the actions. And Mitchem, like Ali, prepared to enter into a statewide litigation with the defendants, presumably without informing Ali of his plans. This does not make the activity collusion.

Further, the record does not reflect clandestine activities by the parties to the settlement. In their February 21, 2019 joint case management statement, the parties indicated they were planning a mediation session on March 26. The following month, April 25, 2019, their joint case management statement reported they were finalizing a settlement and anticipated submittal of it for court approval in June. This occurred before Auto Nation took the June 10 mediation in the Mitchem action off calendar. The fact of their mediation was public record, as was their intention to settle. Their first amended complaint, filed June 11, 2019, added defendants and Labor Code violations and set the date back to February 20, 2017, which made it clear that the claims being settled subsumed those in other, related PAGA actions like Mitchem's. Then the following month, the parties filed a joint motion for approval on July 1. Mitchem did not ask to intervene until August 23, 2019, more than four months after the parties indicated they had reached a tentative settlement agreement. The parties did not act in secret or conceal the settlement; they simply did not give notice to Mitchem.

31

## DISPOSITION

The judgment is affirmed.  Parties to bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.