Filed 5/11/22  Jauregui v. LPF RE Manager CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARTIN JAUREGUI, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LPF RE MANAGER, LLC, <br><br> Defendant and Respondent; <br><br> SANDRA GASCA, <br><br> Movant and Appellant. | B311570 <br><br> (Los Angeles County <br> Super. Ct. No. 19STCV36107) |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Mallison & Martinez, Stan S. Mallison, Hector R. Martinez and Heather M. Hamilton for Movant and Appellant.

David Yeremian & Associates, David Yeremian and Alvin B. Lindsay for Plaintiff and Respondent Martin Jauregui.

Fenton & Keller and Elizabeth R. Leitzinger for Defendant and Respondent LPF RE Manager.

—————————————

Martin Jauregui (Jauregui) filed a wage and hour class action and Labor Code Private Attorneys General Act (PAGA) lawsuit against LPF RE Manager (LPF) based on an off-the-clock security check allegedly imposed by LPF on all workers at LPF's premises. Sandra Gasca (Gasca), who later filed a wage and hour class action and PAGA lawsuit against LPF and labor contractor Valley Harvest (Valley Harvest) based on the same security check required at the LPF worksite, appeals the trial court's denial of her motion to intervene in Jauregui's action. We affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.  *Jauregui Action*

Jauregui is a former employee of LPF at its cannabis manufacturing and distribution facilities in Greenfield, California. In October 2019, Jauregui filed a class action lawsuit in the Los Angeles Superior Court against LPF RE Manager and Doe defendants, alleging failure to pay minimum wages, failure to pay wages and overtime, meal-period and rest-break liability, other violations of the Labor Code, and unfair business practices in violation of Business and Professions Code section 17200. The basis for the causes of action was LPF's alleged practice of requiring all employees to undergo extensive security screening procedures upon arrival and departure for which they were not compensated. As a result of the lengthy screening procedures, breaks and meal periods were not extended, overtime and double time were not correctly calculated, wages owed were not properly paid, and time-keeping records were not properly maintained. In February 2020, Jauregui added a PAGA claim in his first amended complaint.

2

Jauregui defined the class as "All individuals employed by Defendants at any time during the period of four (4) years prior to the filing of this lawsuit and ending on a date as determined by the Court ('the Class Period'), and who have been employed as non-exempt, hourly employees at Defendants' facilities within the State of California."

In June 2020, the parties attended mediation and agreed to settle the action. The settlement agreement negotiated by the parties resolved the claims of LPF employees directly hired by LPF as well as those who were staffed at LPF by Valley Harvest, a labor contractor. In October 2020, Jauregui moved for preliminary approval of the class action and PAGA settlement.

## II. *Gasca Action*

According to her first amended complaint, Gasca was a non-exempt employee of Valley Harvest, a staffing company that provides employees to industrial, food processing, and agricultural businesses. Gasca worked at the LPF Greenfield facility. In February 2020, she filed a class action wage and hour and PAGA complaint in Monterey Superior Court against LPF, Valley Harvest, and others. The allegations of this action were similar to those in the Jauregui case: failing to properly compensate employees for their time spent lining up to be searched during their meal periods and rest periods, before clocking in for work and after clocking out at work at the Greenfield site. She alleged employees were not compensated for all hours worked at the appropriate pay rate, not provided full rest and meal breaks, not given accurate wage statements, and subjected to inaccurate time-keeping records. In the first amended complaint filed in April 2020, she alleged LPF was

3

"liable for all workers supplied to it by Defendant VALLEY HARVEST" under Labor Code section 2810.3.

Gasca sought to represent the following class: "All non-exempt workers employed by Valley Harvest, LLC at any [LPF] facility, at any time between four years prior to the filing of the original complaint in this action and the final disposition of this action."

### III. *Motion to Intervene*

On November 4, 2020, Gasca moved to intervene in the Jauregui action pursuant to Code of Civil Procedure section 387, subdivisions (d)(1)(B) and (d)(2).[1] She alleged that Jauregui, as an LPF employee, did not adequately represent her interests or those of the class she sought to represent, Valley Harvest employees staffed at the LPF facility. Gasca also contended Jauregui was unable to litigate the PAGA claim against Valley Harvest because he was not a Valley Harvest employee. The parties in the Jauregui case opposed the motion to intervene.

The trial court denied the motion to intervene. Gasca appeals.

### DISCUSSION

### I. *Denial of Mandatory Intervention*

Section 387, subdivision (d)(1)(B) requires the trial court to permit a nonparty to intervene in an existing action if (1) the nonparty has an interest relating to the property or transaction that is the subject of the action; (2) the nonparty's ability to protect that interest may be impaired or impeded by the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

disposition of the pending case; and (3) the nonparty's interests are not adequately represented by one or more of the existing parties.

The parties dispute the appropriate standard of review. "California cases are not settled on whether we review the denial of a request for mandatory intervention pursuant to section 387 de novo or for abuse of discretion." (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732.) We need not decide which standard is correct under state law because we find no error in denying mandatory intervention under any standard.

It is uncontested that the first prong of the mandatory intervention test is met here: As a former employee of Valley Harvest whose claims of labor law violations would be released by the settlement agreement as drafted, Gasca has an interest in the pending action.

Gasca, however, did not demonstrate that her ability to protect her interests may be impaired or impeded by the disposition of the pending case, nor did she show that Jauregui is not adequately protecting her interests. The putative class in this action is defined as "[a]ll individuals employed by [LPF] at any time during the period of four (4) years prior to the filing of this lawsuit . . . who have been employed as non-exempt, hourly employees at [LPF] facilities within the State of California," and it therefore encompasses those workers who came to work at LPF both through direct hiring and through a labor contractor. " ' "To employ . . . under the [Industrial Welfare Commission's] definition, has three alternative definitions. It means (a) to exercise control over the wages, hours or working conditions, (b) to suffer or permit to work, or (c) to engage, thereby creating a

5

common law employment relationship." ' " (*Dynamex Operations West v. Superior Court* (2018) 4 Cal.5th 903, 921.)  Jauregui and Gasca both allege LPF exercised control over the wages, hours, and working conditions of employees working at the LPF facility. Accordingly, Valley Harvest employees working at the LPF facilities during the class period were LPF employees.  (See Lab. Code, § 2810.3, subd. (b) ["client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contract for . . . : [¶] [t]he payment of wages."])

Contrary to Gasca's contentions, Jauregui has identified, and can adequately represent, a class that includes those working at LPF whether they were direct hires or supplied by a labor contractor.  Gasca's interests are directly aligned with Jauregui's: both allege LPF required them to pass through a mandatory off-the-clock security check whenever they entered or exited the facility, required them to otherwise work off-the-clock, and made them take non-compliant meal and rest breaks.  There is no indication direct hire employees were differently situated from contract employees in terms of these challenged workplace practices.  Moreover, Gasca retains the right to object to the class settlement's fairness or to opt out of the class settlement and retain her individual claims.

Gasca, however, contends on appeal that the disposition of the action would impair her "interest in recovery of attorney's fees and costs as a result of litigating her claims," and the settlement agreement would eliminate her class and PAGA claims and thus any entitlement to recover fees and costs in conjunction with those claims.  We are not convinced Gasca's interest extends beyond vindicating the claims she asserts in her

6

lawsuit to include an interest that would only arise if she were to litigate and prevail on her claims. Gasca's argument proves too much: if previously-settled underlying causes of action should not be resolved so that another litigant may become a prevailing party on the same claims and collect attorney fees, this would categorically defeat class action litigation whenever attorney fees were available.

Gasca also argues the court erred as a matter of fact and law when it concluded Jauregui had brought and could settle her PAGA claim as a Valley Harvest employee, because Jauregui, never having been a Valley Harvest employee, did not give and could not have given PAGA notice to Valley Harvest. Gasca's argument assumes the content of the PAGA notice determines the scope of the notifier's authority to act for the state and sets an outer limit on the PAGA claims he or she is authorized to release when settling the PAGA representative action. But this is not the case. (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 82.) "PAGA's statutory scheme and the principles of preclusion allow, or 'authorize,' a PAGA plaintiff to bind the state to a judgment through litigation that could extinguish PAGA claims that were not specifically listed in the PAGA notice where those claims involve the same primary right litigated." (*Id.* at p. 83.) As we have previously discussed, Gasca and Jauregui's claims originate in LPF's control of working conditions, wages, and hours of the workers at its facility and its requirement that workers undergo off-the-clock security screenings, work off-the-clock, and take meal and rest breaks that did not comply with legal requirements. Because the claims Gasca has alleged involve the same primary rights at issue in this action, Jauregui is authorized, by virtue of his exhaustion of administrative

7

remedies, to settle PAGA claims as to LPF employees whether they were staffed by a labor contractor or directly hired by LPF. (See *ibid.*)

Gasca also argues Jauregui cannot adequately represent her interests because he did not make all the arguments she would make as an intervener. Specifically, she asserts in her opening brief, "On information and belief, LPF had a significantly greater number of its employees sign arbitration agreements than Valley Harvest," and she contends Jauregui discounted potential liability exposure based on challenges to maintaining and certifying class claims in the face of LPF's arbitration agreements. Gasca provides no citation to evidence in the record to support her claim of a disparity in arbitration agreements: she merely cites to her reply brief in the trial court, which also did not include any citation to an attorney declaration or other evidence offering any basis to allege that a significantly greater number of LPF direct hire employees signed arbitration agreements. As for Gasca's claim that Jauregui discounted potential liability exposure due to challenges to maintaining a class action in the face of arbitration agreements, the evidence to which she cites in the record actually demonstrates that Jauregui's discount of potential liability exposure considered the challenge of maintaining class claims in light of arbitration agreements signed with *both LPF and Valley Harvest*, as well as questions about LPF's ability to pay for any settlement. Given that arbitration agreements as to both LPF and Valley Harvest were considered in the potential liability analysis, and that Gasca has offered no support for the conclusory contention that more arbitration agreements were signed with LPF than Valley Harvest, Gasca's argument is insufficient to demonstrate that her

8

interests are not aligned with or are not represented by Jauregui. The trial court did not err when it found that Gasca failed to establish Jauregui cannot adequately protect her interests or the disposition of the pending case impairs or impedes her interests.

II. ***Denial of Permissive Intervention***

A court may permit intervention under section 387, subdivision (d)(2) if: (1) the nonparty has a direct and immediate interest in the litigation; (2) the intervention will not enlarge the issues in the case; and (3) the reasons for intervention outweigh any opposition by the existing parties. (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386.) We review an order denying a motion for permissive intervention for abuse of discretion. (*Ibid.*)

The trial court denied Gasca's request for permissive intervention. The court observed that Gasca's interests as a potential intervenor were already fully represented by Jauregui and her individual interests were unaffected by the Jauregui litigation because she could opt out of the class and PAGA settlement and pursue her individual claims. The court found Gasca expressly intended to enlarge the issues in the litigation because she intended to assert claims for additional recovery beyond the terms of the settlement agreement. Finally, the court concluded that the reasons for denying intervention "significantly outweigh[ed] any basis to allow it." Specifically, Gasca had no interest that would be harmed if she were not permitted to intervene, but the settlement class and the parties would be prejudiced if she intervened because they had spent more than one year "working towards a fair settlement that will bring timely payments to the settlement class and that will offer finality to this litigation," and intervention threatened to delay or

9

derail a settlement that would benefit LPF and Valley Harvest employees. Additionally, the court noted, to the extent Gasca sought to carve out employees provided to LPF by a labor contractor, "such intervention would be unlikely to benefit them" because it was not clear that LPF's financial condition would permit it to pay an additional settlement beyond the one already before the court for approval.

We cannot conclude the trial court abused its discretion when it denied Gasca's motion to intervene because the court could reasonably conclude her reasons for intervention were outweighed by the reasons supporting the denial of intervention. Gasca did not show intervention was necessary to protect her interests or those of the workers she claimed to represent. As we have discussed above, Jauregui was able to represent her interests adequately, and if Gasca disagreed, she could opt out of the class settlement and pursue her personal claims independently. Moreover, LPF's precarious financial state meant that establishing a separate class of LPF employees staffed by Valley Harvest was unlikely to benefit those employees. On the other hand, permitting intervention would clearly have impaired the interests of the parties to this action. At a minimum, permitting intervention at this point would have delayed payments to the settlement class and the final resolution of the issues for the parties. At worst, intervention could have defeated the settlement the parties had worked toward for many months. The trial court reasonably concluded permissive intervention was not appropriate under these circumstances.

**DISPOSITION**

The order denying intervention is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

WILEY, J.

11